Labrie v. SSA                          CV-97-597-M   01/07/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Claude F. Labrie,
     Claimant,

v.                                              Civil No. 97-597-M

Kenneth S. Apfel, Commissioner
Social Security Administration,
     Defendant.


O R D E R

Pursuant to 42 U.S.C. § 405(g), claimant, Claude Labrie, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). He asserts that the Administrative Law Judge erroneously failed to call upon the expertise of a vocational expert (who was present at the administrative hearing) and, instead, improperly relied exclusively upon the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 (also known as the "Grid") in concluding that he was not disabled within the meaning of the Act. Defendant objects and moves for an order affirming the decision of the Commissioner.

## Factual Background

I.   Procedural History.

On May 24, 1996, claimant filed an application for disability insurance benefits under Title II of the Act, alleging that he had been unable to work since March 1, 1989 (claimant last met the disability status requirements on June 30, 1993 – his "date last insured").  The Social Security Administration denied his application initially and on reconsideration.  On February 7, 1997, claimant, his wife, his attorney, and a vocational expert appeared before an Administrative Law Judge, who considered claimant's application de novo.[1]  On March 26, 1997, the ALJ issued his order, concluding that "[a]lthough the claimant was unable to perform the full range of light work on the date his insured status expired, he was capable of making an adjustment to work which exists in significant numbers in the national economy."  Administrative transcript, at 19.  Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the expiration of his insured status.

_____

[1]     Although present at the hearing, neither claimant's wife nor Mr. Howard Steinberg, a vocational expert, testified. As to claimant's wife, however, the parties stipulated that the testimony which she was prepared to offer would have corroborated that given by claimant.

Claimant then sought review of the ALJ's decision by the Appeals Council. On September 26, 1997, however, the Appeals Council denied his request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review. On November 25, 1997, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 5). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 6). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 7), need not be recounted in this opinion.

**Standard of Review**

I.   Properly Supported Findings by the ALJ are
     Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's position. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). See also Andrews v.

---

[2]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

4

<u>Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts."  <u>Irlanda Ortiz</u>, 955 F.2d at 769.  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See <u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690

F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals a listed impairment;

(4)  whether the impairment prevents the claimant from performing past relevant work; and

(5)  whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if his:

7

physical or mental impairment or impairments are of
such severity that he is not only unable to do his
previous work but cannot, considering his age,
education, and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy . . . .

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.


**Discussion**

I.   <u>Background - The ALJ's Findings</u>.

In concluding that Mr. Labrie was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. At step 1 of the analysis, he concluded that claimant had not engaged in substantial gainful activity since March 1, 1989. At step 2, he concluded that claimant suffers from "chronic low back pain with radiculopathy secondary to degenerative disc disease at L4-L5-S1, an impairment which causes significant vocationally relevant limitations." Administrative transcript at 14. The ALJ next determined that, although severe,

claimant's impairment did not meet the criteria of any listed impairment described in the relevant administrative regulations.

The ALJ then concluded that claimant had a residual functional capacity ("RFC") to perform the exertional requirements of light work.[3] Administrative transcript at 16. The ALJ did, however, recognize that claimant's "capacity for light work was diminished by additional nonexertional limitations which made it impossible for him to perform stooping, kneeling, crouching and crawling activities on more than an occasional basis." Administrative transcript at 17. Thus, the ALJ concluded that claimant was "unable to perform the full range of light work." Id., at 19. Those findings led the ALJ to conclude that, "[s]ince the claimant can perform no more than light work he cannot return to any of his past work." Id., at 17.

_____

3    "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

9

At that juncture, because claimant had demonstrated an inability to perform his prior work, the burden shifted to the Commissioner to show that there were other jobs in the national economy which, despite both his exertional and nonexertional limitations, claimant could perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d at 2.  As the ALJ correctly noted, however, he could not rely directly upon the Grid in making that determination; in this circuit, the Grid is an appropriate shortcut at the fifth step only if a nonexertional impairment does not significantly affect the claimant's range of work ability.  See Ortiz v. Secretary of Health and Human Srvcs., 890 F.2d 520, 524 (1st Cir. 1989).  Accordingly, the ALJ correctly observed that, "[s]trict application of [the Grid] is not possible, . . . as the claimant had nonexertional limitations which narrowed the range of work he was capable of performing on the date his insured status expired."  Administrative transcript at 17.

The ALJ then concluded that, notwithstanding claimant's nonexertional limitations, "there are jobs, existing in significant numbers in the national economy, which the claimant was able to perform on the date his insured status expired."  Id. In support of that conclusion, the ALJ stated that a "finding of

10

'not disabled' may be reached within the framework of the above-mentioned rules." Id. In reaching the conclusion that a significant number of jobs existed in the national economy that claimant could perform, despite his nonexertional limitations, the ALJ did not rely upon the testimony of a vocational expert (as noted above, one was present at the hearing but did not testify). Instead, the ALJ appears to have relied exclusively upon the Grid and the findings of the "State Agency consultants [who] found the claimant retained the functional capacity to perform a range of light work." Administrative transcript at 18. Even crediting the findings of those consultants, however, the question of whether there were jobs available in the national economy which, despite his nonexertional limitations, claimant could perform, remained unanswered.[4]

II. <u>Absent Testimony from a Vocation Expert, Are the ALJ's Findings Supported by Substantial Evidence</u>?

---

4    As the Commissioner correctly notes, opinions from non-examining DDS physicians can constitute "substantial evidence," particularly when they are supported by other evidence in the record. However, such opinions are useful only in determining the claimant's RFC. They provide little, if any, guidance on the question presented in this case: whether there were jobs in the national economy which, in light of his RFC and nonexertional limitations, claimant could perform. Perhaps more to the point, the DDS opinions upon which the ALJ relied in this case simply do not address that question. <u>See</u> Administrative transcript at 122.

11

Typically, in cases such as this, when the Grid is inapplicable, the ALJ will turn to the expertise of a vocational expert to assist him or her in determining whether the claimant had the ability to perform jobs in the national economy. See Ortiz, 890 F.2d at 524 ("where a claimant has one or more [nonexertional] limitations, the [Grid does] not accurately reflect what jobs would or would not be available. In cases where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the [Commissioner] must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert.") (citations and internal quotation marks omitted). The reason for this rule is plain: "Where a claimant has nonexertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991).

To be sure, the Court of Appeals for the First Circuit has recognized that there are circumstances in which an ALJ may properly conclude, without the benefit of a vocational expert's testimony, that a claimant retains the RFC, despite his or her

nonexertional limitations, to perform work in the national economy. See Ortiz, 890 F.2d at 524-25; Heggarty, 947 F.2d at 996. In such cases, the ALJ may use the Grid as a "framework for consideration of how much the individual's work capability is further diminished." Ortiz, 890 F.2d at 524 (quoting 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2)). Here, the ALJ purported to do just that.

> Based on an exertional capacity for light work, and the claimant's age, educational background, and work experience, Section 404.1569 and Rule 202.20, 202.21 and 202.22, Table 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled." The same result would be reached without regard to the skill level of [claimant's] former work or to questions pertaining to transferability of work skills.
>
> Although the claimant was <u>unable to perform the full range</u> of light work on the date his insured status expired, <u>he was capable of making an adjustment to work which exists in significant numbers in the national economy</u>. A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

Administrative transcript at 19 (emphasis added). The difficulty here is that the ALJ resolved the matter in somewhat conclusory terms, without reference to those portions of the record which might support a determination that the combination of claimant's exertional and nonexertional limitations did not preclude him from performing a range of light work. In short, the ALJ's conclusion that claimant "was capable of making an adjustment to

13

work which exists in significant numbers in the national economy" appears to be unsupported or speculative.

Under the standard adopted by the Court of Appeals for the First Circuit, an ALJ may rely exclusively upon the Grid, even when a claimant suffers from nonexertional limitations, provided, however, that the claimant's nonexertional impairments do not "significantly affect claimant's ability to perform the full range of jobs at the appropriate strength level." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991) (emphasis supplied). See also Ortiz v. Secretary of Health & Human Srvcs., 890 F.2d 520 (1st Cir. 1989). A nonexertional impairment, even if substantial, does not "significantly affect" a claimant's ability to perform at the appropriate exertional level if it "has the effect only of reducing the occupational base marginally." Id., at 524. Of course, the more the claimant's nonexertional impairment erodes the applicable occupational base, the less reliable the Grid becomes as a tool in determining whether the claimant is "disabled."

Recognizing that potential problem, other circuit courts of appeals have taken a more conservative approach and imposed greater restrictions on an ALJ's ability to rely exclusively upon

14

the Grid when a claimant suffers from nonexertional limitations. For example, when a claimant suffers from nonexertional limitations, the Court of Appeals for the Eighth Circuit has required ALJ's to use the testimony of vocational experts <u>unless</u> the nonexertional limitations do not affect the claimant's ability to perform the <u>full</u> range of work at the appropriate exertional level.

> The ALJ used the Guidelines as a framework for his decision that [claimant] was not disabled, without resorting to vocational expert testimony. An ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines. However, if the claimant's nonexertional impairments diminish his or her residual functional capacity to perform <u>the full range</u> of activities listed in the Guidelines, the [Commissioner] must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics.

<u>Sanders v. Sullivan</u>, 983 F.2d 822, 823 (8th Cir. 1992) (emphasis supplied). The Eighth Circuit has recognized that if a claimant retains the ability to perform the <u>full</u> range of activities within a specific exertional level, the Grid remains a reliable indicator of whether there are jobs in the national economy which the claimant can perform. If, however, the claimant cannot perform the <u>full</u> range of activities in that exertional level,

15

the Grid becomes less reliable in predicting whether he or she can perform "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Accordingly, at least in the Eighth Circuit, if the nonexertional impairment erodes the applicable occupational base (even "marginally"), the ALJ must look beyond the Grid in making a disability determination.

Other circuits have adopted similar standards. See, e.g., Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996) ("The ALJ should not rely exclusively on the grids when the claimant has a nonexertional impairment that significantly limits his basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion. If nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform.") (emphasis supplied); Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) ("The grids should not be applied conclusively in a particular case unless the claimant could perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the

16

physical capacities to perform most of the jobs in that range.")
(citation and quotation marks omitted).  See also Abbot v.
Sullivan, 905 F.2d 918, 926-27 (6th Cir. 1990).

The value of the rule adopted in cases such as Sanders,
Wolfe, and Thompson is that it eliminates the guesswork inherent
in a standard which asks an ALJ to determine, without expert
assistance, whether a claimant's nonexertional limitations
"substantially" affect his or her ability to perform the full
range of jobs in the appropriate exertional range.  Thus, it
ensures that when nonexertional limitations preclude a claimant
from performing the full range of jobs listed in the Grid, the
Commissioner will produce evidence in support of his assertion
that, despite the reduction in the otherwise applicable
occupational base, there are still jobs (in sufficient numbers)
which the claimant can perform.  Typically, such evidence would
be introduced through the testimony of a vocational expert.
Alternatively, however, it might come in the form of published
vocational resources.  In either event, the ALJ then has
something concrete upon which to base a disability determination.

The more flexible standard adopted by the First Circuit
necessarily suggests that a claimant's nonexertional impairment

17

is "not significant" or "only marginally erodes" the applicable occupational base if it is one that reasonable minds could easily agree has no meaningful impact upon a claimant's ability to perform work at the appropriate exertional level. Examples might include a claimant who is otherwise capable of performing light work, but whose nonexertional impairment limits only his ability to perform more than occasional bending. Because light work typically requires no more than occasional bending, all could agree that his nonexertional impairment would erode the applicable occupational base no more than "marginally," or insignificantly. Similarly, a claimant who was otherwise capable of performing sedentary work, but whose nonexertional limitations precluded her from climbing, kneeling, crouching, or bending, would not be excluded from performing the vast majority of sedentary jobs, which typically do not require the individual to perform such tasks.

If, however, a claimant's nonexertional limitations have a more substantial impact upon his or her ability to perform work at the appropriate exertional level, reliance upon the Grid is inappropriate. In those situations, exclusive reliance upon the Grid is not consistent with the purpose of the Grid nor is it consistent with the assumptions underlying the Grid's presumed

18

reliability.  As the Court of Appeals for the First Circuit has observed, when a claimant suffers from one or more nonexertional limitations which more than marginally affect his or her ability to perform work at the appropriate exertional level, "the Guidelines do not accurately reflect what jobs would or would not be available."  Gagnon v. Secretary of Health & Human Srvcs., 666 F.2d 662, 665 n.6 (1st Cir. 1981).  See also Heggarty v. Sullivan, 947 F.2d at 996.  Thus, when a claimant's nonexertional limitations have more than a minimal impact upon the otherwise applicable occupational base, exclusive reliance upon the Grid simply invites a disability determination which is inherently unreliable or, at a minimum, one which a reviewing court would likely be hard pressed to find was based upon "substantial evidence."

There is no bright line test that ALJ's or courts can employ to determine when, despite the presence of nonexertional limitations, exclusive reliance upon the Grid remains appropriate.  All can probably agree, however, that such occasions are limited to circumstances in which a claimant's nonexertional limitations have only a de minimus effect on the otherwise applicable occupational base.  As our court of appeals has acknowledged, when an ALJ fails to solicit the testimony of a

vocational expert, there is no material difference between using the Grid as a "framework" for making a disability determination and relying "exclusively" upon the Grid in making that determination. See Ortiz, 890 F.2d at 524 n. 4. Thus, the situations in which it is appropriate to use the Grid exclusively, notwithstanding nonexertional limitations, must be narrowly circumscribed. When an ALJ concludes that exclusive reliance upon the Grid is appropriate (and the testimony of a vocational expert is unnecessary), he or she must make factual findings which support that determination.

> [A]n ALJ typically should err on the side of taking vocational evidence when [a significant nonexertional] limitation is present in order to avoid needless agency rehearings. And should an ALJ determine that the Grid can be relied on in such a case, we urge that the evidentiary support for that decision be enumerated more clearly and in greater detail than was done here in order to avoid needless remands for subsidiary fact-finding.

Ortiz, 890 F.2d at 528. The pertinent Social Security Rulings also support this view. See, e.g., SSR 83-14, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, 1983 WL 31254 at *3-4 (1983).

Turning to the facts of this case, the court is compelled to conclude that the ALJ failed to adequately state the factual basis for his decision to rely exclusively upon the Grid in making the disability determination. First, claimant's nonexertional (postural) limitations are not insignificant. Although his treating physicians appear to disagree as to the extent of the disabling effect of those nonexertional limitations, they have opined that, at best, claimant is capable of: (a) lifting between 10 and 30 pounds occasionally and between 5 and 30 pounds frequently; (b) standing for no more than six hours each day, with a break at least every hour and possibly as frequently as every 10 minutes; (c) sitting for no more than four hours each day, with a break at least every hour and possibly as frequently as every 10 minutes; (d) climbing, balancing, stooping, crouching, kneeling, and crawling only occasionally, with possible additional limitations on his ability to push/pull objects. See Medical Assessment of Ability to Do Work-Related Activities prepared by Dr. Shea, Administrative transcript at 180-85; Medical Assessment of Ability to Do Work-Related Activities prepared by Dr. Stein, Administrative transcript at 186-90. See also Report of Dr. Monlux, Administrative transcript at 199-202 (opining that claimant's ability to perform work-

related activities was extremely limited and concluding that he was totally disabled).

Even crediting claimant with the ability to perform work-related tasks at the high end of the range suggested by his treating sources, his nonexertional impairments would seem to affect his ability to perform jobs in the light exertional category more than marginally.

> The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist. Unlike unskilled sedentary work, many unskilled light jobs . . . require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

SSR 83-14, 1983 WL 31254 at * 4.

Based upon the record evidence before it, the court cannot conclude that the ALJ's exclusive reliance upon the Grid was appropriate. Among other things, the ALJ did not state whether

22

he determined that claimant's nonexertional limitations "impose[d] no significant restriction on the range of work [the] claimant is exertionally able to perform," Ortiz, 890 F.2d at 524, nor did he state whether he concluded that claimant's nonexertional limitations only marginally eroded the otherwise applicable occupational base. Absent such factual findings, along with supporting references to the record, the ALJ's exclusive reliance upon the Grid may well have been misplaced.

As to the effect that claimant's nonexertional limitations had upon his ability to perform jobs in the otherwise applicable occupational base, the ALJ concluded that claimant did have nonexertional limitations, and those limitations "narrowed the range of work he was capable or performing," administrative transcript at 17, and that claimant "retained the functional capacity to perform a range of light work." Id., at 18 (emphasis supplied). To rely exclusively upon the Grid under these circumstances, however, the ALJ had to conclude (with proper support in the record) that the claimant's nonexertional limitations either imposed "no significant restrictions" on his ability to perform work in the appropriate exertional level or "only marginally reduced" the otherwise applicable occupational base. Those predicate findings are arguably implicit in the

23

ALJ's order — but if taken as implied, the record support is still unclear. Thus, uncertainty counsels remand, so that the ALJ might clarify whether those predicate facts were actually found to be present in this case and, if so, to specifically make those necessary findings and to identify the pertinent portions of the record which support such findings. If, upon further consideration, the ALJ concludes that the circumstances of this case do not warrant exclusive reliance upon the Grid, he should of course solicit relevant evidence before making a disability determination.

When reasonable minds might legitimately differ as to the effect of a claimant's nonexertional limitations (particularly where a vocational expert is present and ready to testify at the administrative hearing) it might prove more efficient to routinely solicit additional evidence from a vocational expert, thereby removing doubt as to whether the case presents the "unusual instance" in which exclusive reliance upon the Grid is permissible despite the presence of nonexertional limitations. See Ortiz, 890 F.2d at 528.

Based upon this administrative record, and the absence of any testimony from a vocational expert, this court is left with

insufficient evidence by which to measure the validity of the ALJ's conclusion that there were jobs in the national economy which claimant could perform. Consequently, the court is constrained to conclude that the ALJ's disability determination is not supported by substantial evidence. See, e.g., Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (holding that the ALJ failed to adequately articulate the basis for her conclusion that claimant's nonexertional limitations did not substantially diminish his work capacity and failed to consider whether testimony from a vocational expert was necessary).

## Conclusion

At step five of the sequential analysis, the Commissioner bore the burden of proving that there were jobs in the national economy which claimant was capable of performing. He failed to carry that burden. In cases such as this, when the ALJ specifically concludes that a claimant's nonexertional limitations preclude him or her from performing the full range of work within the appropriate exertional level, the ALJ should ordinarily base his or her disability determination, at least in part, upon extrinsic evidence, such as the testimony of a vocational expert or other vocational resource. At a minimum, the ALJ should make the predicate factual findings necessary to

25

establish the case as an "unusual" one in which exclusive reliance upon the Grid is nevertheless appropriate.

Because substantial evidence does not exist in the record to support the ALJ's exclusive reliance on the Grid in determining that claimant was not, prior to his date last insured, disabled within the meaning of the Act, that determination must be vacated. For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 5) is granted and the motion of the Commissioner to uphold his decision (document no. 6) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

January 7, 1999

cc: Roy W. Tilsley, Jr., Esq.
David L. Broderick, Esq., AUSA

26