[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14714
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-01348-CV-JFG-M

JOHN E. PRITCHETT,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 24, 2009)

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

John E. Pritchett, through counsel, appeals the district court's order affirming the Social Security Commissioner's ("Commissioner") denial of supplemental security income ("SSI"), 42 U.S.C. §§ 405(g) and 1383(c)(3). Pritchett argues that (1) the district court violated Fed.R.Civ.P. 52[1] by failing to make findings of fact and adequate conclusions of law in affirming the Commissioner's denial of benefits; (2) the Administrative Law Judge ("ALJ") erred in rejecting the opinion of Pritchett's treating physician that Pritchett was probably medically disabled; (3) the ALJ erred in rejecting as incredible Pritchett's testimony as to the severity and extent of his impairment; (4) the ALJ's hypothetical question to the vocational expert ("VE") was incomplete; (5) the ALJ's finding that Pritchett maintained the residual functional capacity ("RFC") to perform sedentary work was not supported by substantial evidence; and (6) the Appeals Council ("AC") erred in failing to remand the case for consideration of alleged new evidence.  For the reasons set forth below, we affirm.

We review a social security case to determine whether the denial of benefits is supported by substantial evidence and whether the correct legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than

---

[1] Pursuant to Rule 52, "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."

create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

A claimant can be disabled for supplemental security income benefits only if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

## I. District Court's Decision

After the ALJ denied benefits, Pritchett requested review by the AC. The AC denied review of the ALJ's decision, and its order of denial became the final decision of the Commissioner. Pritchett appealed the Commissioner's denial to the district court. The district court noted that it had considered the entire record and affirmed the denial, finding that it was based on substantial evidence and proper legal standards.

On appeal from the Commissioner's final decision, the district court must review the record as a whole and determine if the ALJ's decision was supported by substantial evidence. Foote, 67 F.3d at 1558-60. In doing so, the district court

3

must not re-weigh the evidence.  Id. at 1560; 42 U.S.C. § 405(g) (instructing that, on appeal, the findings of the ALJ as to any fact, if supported by substantial evidence, shall be conclusive).

In affirming the denial of benefits, the district court specifically stated that it had reviewed the entire record and concluded that the ALJ had applied the appropriate legal standards and reached a conclusion supported by substantial evidence.  See Foote, 67 F.3d at 1558-60.  The district court was not required by statute or case law to also articulate findings of fact.  See id.; 42 U.S.C. § 405(g).  Accordingly, we affirm as to this issue.

## II. Treating Physician's Opinion

In finding that Pritchett was not disabled, the ALJ assigned no weight to the conclusion of Pritchett's treating physician, Dr. Bruce Pava, that Pritchett probably was medically disabled, reasoning that the conclusion was not supported by Dr. Pava's own examination of December 8, 2005, or any other record.  The ALJ assigned significant weight, however, to Dr. Pava's conclusions on the extent of Pritchett's ability to perform certain activities, lift and carry, and withstand certain conditions, but noted that Pritchett actually probably was more limited in his ability to lift and carry and stand and walk than Dr. Pava concluded.

"The opinion of a treating physician is entitled to substantial weight unless

4

good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). "Good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Lewis, 125 F.3d at 1440. If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ did not err in assigning little weight to Dr. Pava's conclusion that Pritchett probably was medically disabled, as the ALJ clearly articulated its decision and as Dr. Pava's opinion was inconsistent with his own records. See Lewis, 125 F.3d at 1440; MacGregor, 786 F.2d at 1053. First, in denying benefits, the ALJ clearly explained that he would not accept Dr. Pava's conclusion on Pritchett's disability because it was not supported by Dr. Pava's own examination of December 8, 2005, which demonstrated that Pritchett retained the ability to perform several physical activities. See MacGregor, 786 F.2d at 1053.

Also, after administering a disability examination, Dr. Pava made a record showing that Pritchett walked with a normal gait, could walk on his heels and toes,

5

could rise from a mid-squatting position without difficulty, and had full active range of motion in his joints and extremities. Dr. Pava also made a record showing that Pritchett could stand, walk, and sit for relatively significant amounts of time; lift and carry objects of relatively significant weights; constantly handle, talk, and hear; occasionally climb, balance, stoop, or kneel; and withstand certain conditions commonly found in workplaces. Because Dr. Pava found that Pritchett retained these notable abilities, his findings did not support a conclusion that Pritchett could not perform any work in the national economy. See Lewis, 125 F.3d at 1440; Crayton, 120 F.3d at 1219. Accordingly, we affirm as to this issue.

### III. Pritchett's Testimony

At the hearing before the ALJ, Pritchett testified as follows. Because of his medical problems, he could not work. He took two or three naps per day. The only activities he did were grocery shopping once a week, daily cooking, house cleaning, laundry, and taking out the garbage twice a week. In carrying the 10 to 15 pounds of garbage 150 yards to the street, he experienced symptoms associated with angina. He likely could walk a city block, but would have to "sit [] for two hours to catch [his] breath" afterward and would have to "call somebody to come and get [him]" rather than walk back. He was not sure if he even could do a job that required merely "sit[ting] all day and push[ing] paper" because he could not

6

sit in one position all day, because of arthritis in his knees, and getting up to stretch and walk around wore him out. In finding that Pritchett was not disabled, the ALJ concluded that, while Pritchett's severe impairments, in the form of coronary artery disease and hypertension, could reasonably be expected to produce the loss of stamina and strength and shortness of breath of which Pritchett complained, Pritchett's statements on the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." The ALJ reasoned that the record did not contain objective signs or findings that could reasonably be expected to produce, or any other reason to believe that Pritchett was suffering, the degree of pain and limitation claimed. The ALJ cited an RFC Assessment prepared by the Disability Determination Service ("DDS"), a Graded Exercise Test ("GXT") administered by Dr. David Gordon, and the medical records from Dr. Pava, noting that these demonstrated that Pritchett retained many physical abilities.

The ALJ must consider a claimant's subjective testimony if he finds (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (b) that the medical condition was of such severity as to reasonably give rise to the alleged pain. Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986). If the ALJ decides to discredit the claimant's testimony, he must clearly

7

articulate explicit and adequate reasons for his decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  In articulating its reasons, the ALJ need not specifically refer to every piece of evidence "so long as [his] decision . . . .is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole." Dyer, 395 F.3d at 1211.  Also, the ALJ may cite the claimant's daily activities. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding that substantial evidence supported the ALJ's finding that the claimant's complaints of disabling pain were not credible because the record contained evidence that the claimant had lifted rocks and had worked washing mobile homes during the period of his alleged disability).  We will not disturb a clearly articulated credibility finding that is supported by substantial record evidence.  Foote, 67 F.3d at 1562.

The ALJ did not err in partially discrediting Pritchett's testimony, as the ALJ clearly articulated its decision and as the record did not confirm, and the severity of the medical condition did not suggest, the alleged extent of the pain and limitation suffered.  See Mason, 791 F.2d at 1462; Dyer, 395 F.3d at 1210.  First, in rejecting Pritchett's testimony on the intensity, persistence, and limiting effects of his loss of stamina and strength and shortness of breath, the ALJ clearly explained that the records did not support Pritchett's claims because the RFC Assessment, GXT, and

8

medical records from Dr. Pava demonstrated that Pritchett retained many physical abilities despite these symptoms. See Dyer, 395 F.3d at 1210-11.

Also, Pritchett testified that he did the grocery shopping once a week, cooked daily, did the house cleaning and laundry, and took out the garbage twice a week. The DDS's RFC Assessment also revealed, similarly to the above-discussed disability examination by Dr. Pava, that Pritchett could stand, walk, and sit for relatively significant amounts of time; lift and carry objects of relatively significant weights; constantly handle, talk, and hear; occasionally climb, balance, stoop, or kneel; and withstand certain conditions commonly found in workplaces. A GXT likewise revealed that Pritchett did not experience chest pain or shortness of breath or sinus tachycardia depression or arrhythmia during physical exercise. Because the medical record evidence demonstrated that Pritchett could perform normal daily and weekly household activities, retained the ability to perform the above physical activities, and could perform physical exercise without shortness of breath, it did not support Pritchett's claims that he experienced his symptoms so frequently and to such an extent that he could not work and must nap three times per day. See Mason, 791 F.2d at 1462; Wolfe, 86 F.3d at 1078.

We also note that, on January 24, 2005, Pritchett told Dr. Pava that his pain was "rare[]." Because Pritchett expressed that the chest pain did not occur as

9

frequently as he otherwise claimed, his own prior statements do not support his testimony. Likewise, on two occasions, namely, when Pritchett presented to the Gulf Breeze Hospital ER with chest pain on November 11, 1999, and to the Summit Medical Center ER with chest pain on March 1, 2005, records show that his pain subsided entirely with medication. Because the medical record evidence demonstrated that medication could completely treat Pritchett's pain, it does not suggest that his medical condition was of such severity that he could not work. See Mason, 791 F.2d at 1462. Accordingly, we affirm as to this issue.

## IV. Hypothetical Question

At the hearing before the ALJ, Norma Stricklin, a VE who had heard Pritchett's testimony and reviewed Pritchett's medical records, testified that Pritchett had worked as a (1) bricklayer, a job that was heavy in physical demands and skilled; (2) a carpenter's helper, a job that was heavy in physical demands and unskilled; and (3) a welder, a job that was medium in physical demands and at the higher end of semi-skilled, and that the skills he used to complete these jobs would not translate to the sedentary level because they were primarily physical and involved medium levels of exertion. The ALJ posed a hypothetical question to the VE concerning available jobs for a person who (1) was 48 years old, had a GED, and previously worked as bricklayer, carpenter's assistant, and welder;

10

(2) experienced no more than moderate pain that probably limited him to sedentary jobs; (3) required a work place free of dust, fumes, and gases, and that was temperature and humidity controlled; (4) frequently could endure vibration or reach overhead; (5) occasionally could balance, stoop, kneel, or climb ramps and stairs; and (6) never could work on ladders, ropes, or scaffolds or around unprotected heights or dangerous or moving equipment. Stricklin responded that, while a person of these characteristics could not return to his previous employment because of exertional restriction limitations, he could work as (1) a ticket taker or cashier, jobs that numbered approximately 7,000 in Alabama; or (2) an information clerk, assembler, inspector, or machine operator, jobs that numbered approximately 6,000 in Alabama. Stricklin indicated that these jobs would allow 10 to 15 absences per year. In concluding that Pritchett's severe impairments, in the form of coronary artery disease and hypertension, did not render him disabled, the ALJ relied in part on the VE's testimony concerning available jobs that Pritchett could perform.

In deciding whether the claimant may perform other work in the national economy, the ALJ may consult a VE by way of a hypothetical question. Wolfe, 86 F.3d at 1077-78. In order for a vocational expert's testimony in response to this question to constitute substantial evidence on which the ALJ may rely, the question

11

must comprise all of the claimant's impairments. <u>Vega v. Comm'r of Soc. Sec.</u>, 265 F.3d 1214, 1220 (11th Cir. 2001). However, the ALJ is not required to include in the question claims of impairment that he has found unsupported. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d. 1155, 1161 (11th Cir. 2004).

The ALJ did not err in relying in part on the VE's response to his hypothetical question, as that question comprised all of Pritchett's recognized impairments. <u>See</u> <u>Vega</u>, 265 F.3d at 1220. The question posed referenced the pain Pritchett suffered and certain of the limitations Pritchett suffered, which were outlined in the results of the above-discussed RFC Assessment and disability examination. Though the question did not specifically reference coronary artery disease or hypertension, the VE had listened to Pritchett's testimony and reviewed his medical records, such that she knew the medical condition from which his pain stemmed. Though the question did not reference knee pain, the ALJ was not required to include this alleged impairment, because the ALJ did not find that it constituted a severe impairment for disability purposes. <u>See</u> <u>Crawford</u>, 363 F.3d. at 161. Accordingly, we affirm as to this issue.

### V. RFC Finding

The ALJ concluded that, though Pritchett did not retain the capacity to do his past work, he retained the RFC to perform sedentary exertional work. The ALJ

cited the above-discussed RFC Assessment , GXT, and medical records from Dr. Pava, noting that these demonstrated that Pritchett retained many physical abilities. The ALJ also concluded that such jobs existed in significant numbers in the national economy.

Sedentary jobs are defined as those that generally require sitting. 20 C.F.R. § 404.1567(a); Kelley v. Apfel, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999). However, sedentary work may require standing and walking occasionally, so long as the "periods of standing or walking . . . total no more than about 2 hours of an 8-hour workday, and sitting . . . total[s] approximately 6 hours of an 8-hour workday." Kelley, 185 F.3d at 1213 n.2.

Substantial evidence supports the RFC assigned Pritchett, as the ALJ clearly explained this conclusion and as the medical records demonstrate that Pritchett could perform the activities necessary for sedentary work. See Lewis, 125 F.3d at 1439. First, in making his determination, the ALJ clearly stated that the RFC Assessment, GXT, and disability determination established that Pritchett could perform sedentary work.

Also, as discussed above, these medical records demonstrate that Pritchett could sit, stand, or walk for six hours in an eight-hour workday, according to the RFC Assessment, or sit for an unlimited period, stand for four hours in an eight-

hour work day, or walk for two hours in an eight-hour work day, according to Dr. Pava's disability determination. Because sedentary work involves sitting for six hours in an eight-hour workday and standing or walking two hours in an eight-hour work day, Pritchett retained the capacity to do such work. See 20 C.F.R. § 404.1567(a); Kelley, 185 F.3d at 1213 n.2. Accordingly, we affirm as to this issue.

## VI. New Evidence

In finding that Pritchett's severe impairments were coronary artery disease and hypertension, the ALJ noted that Pritchett also suggested that he suffered liver failure, but found that this complaint did not constitute a severe impairment. The ALJ reasoned that the record, while confirming that Pritchett had elevated liver enzymes secondary to alcohol consumption, demonstrated that the liver impairment noted improved with treatment and proper diet, such that the record did not establish that any liver impairment lasted or would last for 12 continuous months or had more than minimally impacted Pritchett's ability to function.

When Pritchett requested review of the ALJ's decision by the AC, he submitted additional medical records. Certain of these were duplicates of those already submitted. Those that were not duplicates demonstrated the following. On March 18, 2006, Pritchett presented to the Gadsden Regional Medical Center

14

ER with chest pain that rated a seven out of ten.  However, Pritchett left the hospital against medical advice before being fully examined.  On March 20, 2006, Pritchett presented to Riverview Regional Medical Center ER with a recent history of two to three days of vomiting blood.  A doctor performed a blood test and noted that it demonstrated a grossly abnormal liver profile, probably related to alcoholic liver disease. The doctor performed an upper endoscopy and noted that it did not demonstrate gastroparesis or ulcer.  The doctor diagnosed an upper gastrointestinal bleed.  The doctor treated with blood transfusion and advised Pritchett to absolutely cease all alcohol consumption.  The AC considered the newly discovered evidence and denied review of the ALJ's decision.

The AC must  consider "new, material, and chronologically relevant evidence and must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1262 (11th Cir. 2007); see 20 C.F.R. § 404.970(b).  The AC may deny review if, even in the light of the new evidence, it finds no error in the opinion of the ALJ. Ingram,496 F.3d at 1262. Its decision to deny review in light of new evidence is subject to judicial review. Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998). In conducting this review, we "look at the pertinent evidence to determine if the evidence is new and material,

15

the kind of evidence the [AC] must consider in making its decision whether to review an ALJ's decision." Id.

The AC did not err in denying review of the ALJ's denial, even in light of the evidence presented, as this evidence was neither new nor material. See Falge, 150 F.3d at 1324. First, certain of this evidence constituted duplicates of that already submitted. Also, the evidence that was new comprised medical records that were immaterial because they offered no evidence that reasonably could be expected to alter the ALJ's decision. See id.. The March 18, 2006, records offer no real evidence, since Pritchett left against medical advice before being treated. The March 20, 2006, records demonstrated that Pritchett suffered liver problems, but did not demonstrate that Pritchett's liver impairment would not resolve with treatment and proper diet, or otherwise lasted or would last for 12 continuous months, or more than minimally impacted Pritchett's ability to function. Accordingly, we affirm as to this issue.

**AFFIRMED.**