United States Court of Appeals,

Eleventh Circuit.

No. 94-2234.

John E. WOLFE, Plaintiff-Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security Administration[1], Defendant-Appellee.

July 3, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-349-CIV-FTM-21D), L. Clure Morton, Judge.

Before BIRCH and BARKETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this appeal, we review the district court's order affirming an Administrative Law Judge's ("ALJ") denial of a claimant's request for disability consideration and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended. 42 U.S.C. §§ 416(i), 423 (Supp.1995). The district court determined that the ALJ did not err in refusing to reopen two prior ALJ decisions and in relying on vocational expert testimony from prior hearings in reevaluating and adjusting the claimant's educational level and past work level in applying the Medical

---

[1]Effective March 31, 1995, the functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed.R.App.P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying action.

Vocational Guidelines found in the Code of Federal Regulations ("C.F.R."). We find that the district court erred by not holding that the ALJ's reconsideration on the merits of the prior applications constituted a *de facto* reopening of those decisions. We also find that the district court erred by not finding that there was insufficient evidence for the ALJ to hold that the claimant's educational level was "marginal." On that ground, we remand the case to the district court with direction to remand to the Secretary of the Department of Health and Human Services to make further findings of fact.

## I. BACKGROUND

John Wolfe was born on September 28, 1931 and worked for twenty-five years as a truck assembly line worker at a General Motors plant in Michigan. His duties at the plant included light metal finishing, medium metal welding, and heavy truck assembly of doors and gates. In January of 1982, Wolfe injured his back in an automobile accident. Since undergoing back surgery in April of 1982, Wolfe has been advised to limit his activities and to avoid activities that could cause back strain. He claims that he has not engaged in any work activities since his accident.[2]

Wolfe first applied for Social Security benefits in 1983. He claimed that he was disabled because of a heart condition, post lumbar laminectomy and bone fusion, as well as vertebrae and nerve damage. The Secretary of the Department of Health and Human Services (the "Secretary") denied Wolfe's application for

---

[2]There is some evidence in the record that Wolfe has been employed at times since his accident. *See, e.g.,* R2-16-40. This evidence is discussed *infra.*

disability insurance benefits.  Wolfe applied for reconsideration of his application, but reconsideration was denied.  He then requested an administrative hearing before an ALJ.  After the administrative hearing, at which Wolfe was represented by counsel,[3] the ALJ determined that Wolfe could not perform his past relevant work, but that there were other jobs that Wolfe could perform, that such jobs existed in significant numbers in the national economy, and that, therefore, Wolfe was not "disabled" under the Social Security Act.  The ALJ based his determination in part on the testimony of vocational expert Forrest VanValin and in part on the Medical Vocational Guidelines (the "grids"), found at 20 C.F.R. § 404, Subpart P, App. 2 (1995).  Wolfe did not appeal the ALJ's 1984 decision, which adjudicated the period from January 22, 1982, to March 8, 1984.  The ALJ's determination thus became the final decision of the Secretary.

In 1985, Wolfe filed a second application for benefits, which was denied by the Secretary.  He again requested reconsideration and a hearing.  After the hearing in 1986, at which Wolfe waived his right to counsel, a second ALJ denied Wolfe's claim and found that Wolfe was not disabled during the adjudicated period, January 22, 1982, to June 12, 1986.  Because Wolfe did not appeal the decision of the second ALJ, it became the final decision of the Secretary.

---

[3]Wolfe contends that the lawyer who appeared at the first hearing was representing him for the purposes of his automobile accident and knew nothing about Social Security law;  he merely accompanied Wolfe to the hearing as an observer.  Because the transcript from the hearing has not been provided, we must rely on the decision of the ALJ, who states that Wolfe "was represented by his attorney."  R2-16-262.

In 1991, Wolfe filed the current application for benefits covering the period from June 13, 1986, through December 31, 1987. At a hearing before a third ALJ, Wolfe, who was represented by counsel, alleged that there were errors in the two previous decisions that warranted reopening those decisions. The errors, Wolfe contended, concerned Wolfe's alleged functional illiteracy. The third ALJ reached the following conclusions concerning Wolfe's educational level:

> In the prior decisions, findings were made that the claimant's education was at a "limited" seventh grade level (Exhibit B-1 and Exhibit C-1). However, the representative notes that Mr. Wolfe has continually contended functional illiteracy and his psychological testing in the record from September 13, 1985 reflects a significant reduction in reading and spelling below a third grade level and math at a fifth grade level. The claimant's intelligence scores from verbal, performance and full-scale I.Q. were within normal range 88-97.
>
> The Administrative Law Judge does not find the claimant to be "illiterate" within the meaning of existing regulations (20 CFR 404.1564). The claimant is able to perform rudimentary reading and spelling at a second grade level. His intelligence testing in March 1985 states that his spelling and reading were below a third grade level and that the claimant had significant difficulties in reading. This is interpreted by the Administrative Law Judge as having a reading and spelling level tested just below third grade level or in a second grade level of functioning. This is not illiteracy. This is functioning on a marginal education level.

R2-16-34-35.

The third ALJ also determined that although the prior decisions had erroneously labeled Wolfe as functioning at a "limited" rather than a "marginal" educational level, the errors were not reversible because there were jobs in the national economy that Wolfe could perform at either educational level. Based on the determination that Wolfe's previous work for General Motors was semi-skilled, light work with transferable skills, that Wolfe was

physically able to perform light work, that he had a marginal educational level, and that he was approaching advanced age, the grids in the Code of Federal Regulations classified Wolfe as not disabled. Therefore, the ALJ concluded that he would not reopen the prior decisions. The ALJ went on to find that Wolfe was not disabled during the period covered by his third application for benefits.

The Social Security Appeals Council denied review of the third ALJ's decision and the district court, pursuant to 42 U.S.C. § 405(g), affirmed this denial. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review the Secretary's factual findings for substantial evidence and the Secretary's conclusions of law *de novo.* 42 U.S.C. § 405(g) (Supp.1995); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991) (per curiam); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990).

## II. ANALYSIS

A. Medical Vocational Guidelines

We first address Wolfe's argument that, in the current application, the ALJ was compelled to find him disabled pursuant to grid rule 202.09 because he was approaching advanced age and illiterate. Wolfe also contends that, as of September 28, 1991, he was at advanced age and thus under grid rules 202.01 or 202.02, he would be considered disabled. The Secretary asserts that the ALJ correctly used grid rule 202.12 to conclude that Wolfe is not disabled.

During the adjudicated period, Wolfe's age, as defined in the grids, ranged from closely approaching advanced age (54) to

advanced age (56). *See* 20 C.F.R. §§ 404.1563(c) & (d) (1995). The ALJ found that Wolfe functioned at a "marginal" educational level. *See* 20 C.F.R. § 404.1564(b)(2) (1995). Finally, the ALJ concluded that Wolfe's prior relevant work at General Motors was semi-skilled with transferable skills. *See* 20 C.F.R. §§ 404.1568(b) & (d) (1995).

Wolfe claims that he is illiterate, rather than educated at a marginal or limited level as described in the three ALJ decisions. The regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1). "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id.* The record reflects that Wolfe had formal education through the seventh grade, but he testified that he could neither read nor write, although he could count and make change. At the second hearing, a vocational expert testified that Wolfe read at below the third grade level. The vocational expert's report indicated that Wolfe could read a total of five words that were at approximately the first grade level. Wolfe's own vocational expert reported that "Wolfe is functionally illiterate in regard to reading and spelling and is only able to do basic adding, subtracting, and multiplying." R2-16-539.[4]

---

[4]The third ALJ rejected Wolfe's vocational expert's report as not credible because (among other reasons unrelated to Wolfe's educational level) the vocational expert "terms the claimant as "functionally illiterate,' a term of art which is not specifically correct in terms of the claimant's at least marginal reading and spelling at the second grade level and math at the fifth grade level as defined under existing regulations. (20 CFR

Both the first and second ALJs concluded that Wolfe had a limited education.  In 1992, the third ALJ found that the two prior determinations that Wolfe functioned at the limited level were erroneous.  Instead, the ALJ concluded that Wolfe functioned at the marginal level.

> Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.  We generally consider that formal schooling at a 6th grade level or less is a marginal education.

20 C.F.R. § 404.1564(b)(2).  We do not find substantial evidence to support the third ALJ's conclusion that Wolfe possesses a marginal education.  "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995) (citation omitted).  We should not reweigh the evidence nor should we substitute our discretion for that of the ALJ.  *See id.; Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992).

The only specific evidence of Wolfe's reading level came from the vocational expert, who testified that Wolfe could read only five first grade words.  This is not substantial evidence to support the ALJ's conclusion that Wolfe has "a reading and spelling level tested just below third grade level or in a second grade level of functioning."  R2-16-35.  Furthermore, a determination that Wolfe has a second grade educational level does little to shed light on whether he can "read and write a simple message."

404.1563)."  R2-16-45.

We find no cases in this circuit that address the issue of educational level in a case such as this one. We turn, therefore, to other circuits that have faced this issue. When examining the difference between the definitions of marginal education and illiteracy in the regulations, the Seventh Circuit noted:

> These definitions are helpful, but they do not (and perhaps in the nature of things could not) establish clear rules over the whole range of potential disputes, such that once the facts are found the legal outcome can be obtained by a mechanical application of the rules. The regulations make clear that being able to sign your name doesn't make you literate and that you can be illiterate even if you have had a significant amount of formal schooling (it may not have taken). Beyond that, the picture dims.

*Glenn v. Secretary of Health and Human Services,* 814 F.2d 387, 390 (7th Cir.1987).

In *Skinner v. Secretary of Health and Human Services,* 902 F.2d 447, 449 (6th Cir.1990), the claimant was given a Wide Range Achievement Test ("WRAT"), the same test given to Wolfe by the vocational expert. Skinner's test results placed his reading level at below the third grade. *Id.* The vocational expert in *Skinner* "testified that a person who reads and writes on the third grade level is functionally illiterate." *Id.* Nevertheless, the Secretary concluded that Skinner possessed a marginal education. *Id.* at 448. A magistrate judge found that the ALJ's determination was wrong and that Skinner was illiterate, but the district court rejected that magistrate judge's report and recommendation finding that there was substantial evidence to support the ALJ's finding. *Id.* The Sixth Circuit reversed and held that the record was "replete with evidence that Mr. Skinner is illiterate." *Id.* at 450.

In *Dixon v. Heckler,* 811 F.2d 506, 509-10 (10th Cir.1987), the court reversed the district court's affirmation of the Secretary's denial of benefits finding that the record did not provide substantial evidence of the claimant's literacy.  The court defined substantial evidence as "more than a "mere scintilla,' but less than a preponderance, and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "  *Id.* at 510 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).  The court then analyzed the faults in the ALJ's reasoning as follows:

> The ALJ's apparent reliance on Dixon's "marginal education" to establish her literacy is misplaced.  Although Dixon reported six or possibly seven years of formal schooling, the Secretary's regulation provides for use of numerical grade level to determine educational abilities only if there is no other evidence to contradict it.  Especially when many years have passed since completion of formal education, as in Dixon's case, "the numerical grade level ... completed in school may not represent actual educational abilities."  20 C.F.R. § 416.964(b).

*Id.* at 510.

We overturn the district court's finding that the ALJ's determination that Wolfe is marginally educated is supported by substantial evidence.  This does not mean that we find substantial evidence to support a classification of Wolfe as illiterate.  We simply find that this record is lacking in evidence to support *any* classification of Wolfe's educational level.  We find it necessary, therefore, to remand this case for further findings of fact on whether or not Wolfe is illiterate.

In the alternative, Wolfe argues that there is insufficient evidence to support the ALJ's determination that there are jobs in the national economy that he can perform.  Wolfe claims the ALJ

erred in not making specific findings on whether his nonexertional limitations, namely pain, weakness, and illiteracy, preclude a finding that Wolfe is not disabled. Wolfe also claims that the third ALJ circumvented the grid rules, which, he argues, would dictate a finding that he is disabled, by calling on a vocational expert to identify jobs that Wolfe still could perform.[5]

When the Secretary determines that a claimant is unable to return to his past work, the burden is on the Secretary to show that there is other work in the national economy that the claimant can perform. *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985). The ALJ must take into account the claimant's age, education, and previous work experience. 42 U.S.C. § 423(d)(2)(A) (1991 & Supp.1995). The ALJ should not rely exclusively on the grids when the claimant has a nonexertional impairment that significantly limits his basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion. *Francis,* 749 F.2d at 1566. If nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors, but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform. *Welch v. Bowen,* 854 F.2d 436, 439-40 (11th Cir.1988) (per curiam).

Wolfe's argument that his illiteracy was a nonexertional impairment that the ALJ failed to consider is without merit because

_____

[5]A nonexertional impairment is one that significantly impairs the claimant's ability to meet the demands of a job other than the strength demands. 20 C.F.R. §§ 404.1569a(a) & (c).

illiteracy is not a nonexertional impairment. Examples of nonexertional mental impairments include "difficulty maintaining attention or concentrating," and "difficulty understanding or remembering detailed instructions." 20 C.F.R. § 404.1569a(c)(ii) & (iii). Wolfe cites *Allen v. Sullivan,* 880 F.2d 1200 (11th Cir.1989), in support of his proposition that illiteracy is a nonexertional impairment, but that case involved a claimant who was borderline mentally retarded. While mental retardation is considered a nonexertional impairment, the record clearly indicates that Wolfe functions within the I.Q. range of a person of average intelligence and is not mentally retarded. There is nothing in the regulations or case law to indicate that illiteracy, in and of itself, should be considered a nonexertional impairment.

Wolfe also claims that the ALJ did not consider properly his "pain and suffering" as a nonexertional impairment. There is evidence in the record that Wolfe testified about his back and chest pains at the 1992 hearing. R2-16-110, 117, 119. The ALJ discredited this testimony, however, based on the fact that evidence existed that Wolfe had lifted rocks and had an "ongoing advocation [sic] of mobile home washing" during the adjudicated period. R2-16-40. The ALJ also noted that Wolfe's "course of treatment for his spinal, heart and thyroid conditions during the period in issue were entirely conservative in nature." R2-16-41. We find that there is substantial evidence to support the ALJ's decision to discredit Wolfe's testimony regarding nonexertional impairments.

"This court has recognized that the grids may be used in lieu

of vocational testimony on specific jobs if none of the claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." *Passopulos v. Sullivan,* 976 F.2d 642, 648 (11th Cir.1992). The ALJ found no credible evidence of nonexertional limitations suffered by Wolfe. Therefore, the ALJ was under no obligation to use vocational expert testimony to supplement the grids to determine if Wolfe was disabled.

B. Reopening of Prior Decisions

Wolfe argues that the third ALJ effectively reopened the prior decisions by reexamining the merits of those decisions. We have jurisdiction to review the Secretary's refusal to reopen a prior decision if (1) the claimant raises a colorable constitutional claim, or (2) the record demonstrates that there has been an actual reexamination of the merits of a prior administrative decision. *Jones v. Department of Health & Human Servs.,* 941 F.2d 1529, 1533 (11th Cir.1991) (per curiam).[6]

Wolfe claims that the prior ALJ decisions in fact were reopened by the third ALJ when he revised Wolfe's educational level and past relevant work description. The Secretary contends that the ALJ merely examined the prior decisions and specifically declined to reopen them. Federal courts generally lack jurisdiction to review a decision by the Secretary to refrain from reopening a prior claim for benefits. *Califano v. Sanders,* 430

---

[6]The C.F.R. also allows a court to reopen a prior proceeding to correct an error that appears on the face of the evidence that was considered when the decision was made. 20 C.F.R. § 404.988(c)(8).

U.S. 99, 107-09, 97 S.Ct. 980, 985-86, 51 L.Ed.2d 192 (1977). In *Passopulos,* we outlined the circumstances that would permit our review of a final decision of the Secretary:

> Generally, a final decision by the Secretary will be deemed reopened if it is "reconsidered on the merits to any extent and at any administrative level", *Cherry v. Heckler,* 760 F.2d 1186, 1189 (11th Cir.1985); *Hall v. Bowen,* 840 F.2d 777, 778 (11th Cir.1987). The ALJ, however, must be allowed some leeway to evaluate how newly presented evidence relates back to the prior application in order to determine whether to reopen the case pursuant to 20 C.F.R. §§ 404.988, 404.989. *Hall,* 840 F.2d at 778; *Cherry,* 760 F.2d at 1189. Specifically, this court has held that an ALJ does not reopen a prior final decision when the ALJ evaluates evidence presented in support of the original application solely to make a reasoned determination of its *res judicata* effect on the second application. *Cherry,* 760 F.2d at 1189. Alternatively, this court has suggested that the Secretary's final decision will be deemed reopened if the ALJ does not apply *res judicata* and bases an ultimate determination on a review of the record in the prior application. *Cherry,* 760 F.2d at 1189 (citing with approval *Brown v. Heckler,* 565 F.Supp. 72, 74 (E.D.Wis.1983)).

*Passopulos,* 976 F.2d at 645-46 (11th Cir.1992).

In the 1986 hearing, vocational expert Tremblay testified that Wolfe's past relevant work as a metal finish repairer was semi-skilled, heavy work with no transferable skills because his skills were specific to the automotive industry. R2-16-86. In 1992, the third ALJ concluded that Tremblay's testimony was less "credible" and less "appropriate" than VanValin's testimony at the 1984 hearing. R2-16-35-37. The third ALJ relied on VanValin's testimony in finding that Wolfe's past job had transferable skills. R2-16-44. The ALJ's task is to examine the evidence and resolve conflicting reports. *Powers v. Heckler,* 738 F.2d 1151, 1152 (11th Cir.1984) (per curiam). We find that the third ALJ's examination of the conflicting vocational expert testimony from the two prior hearings was appropriate and did not constitute a reopening of the

prior decisions.  *See Rohrich v. Bowen,* 796 F.2d 1030, 1031 (8th Cir.1986) (holding that an ALJ's review of claimant's prior medical examination from a prior application did not amount to a reconsideration of the prior application on its merits).

The third ALJ's determination that the other two ALJs had mischaracterized Wolfe's educational level as "limited," when it was actually "marginal," constituted a reopening.  By determining that the first two ALJs had erred, the third ALJ went beyond evaluating evidence for the purpose of making a reasoned determination of its *res judicata* effect.  The ALJ reconsidered the merits of the prior decisions with regard to Wolfe's educational level.  When we determine that an ALJ has reopened a prior decision, we have jurisdiction to review the prior decision to the extent that it has been reopened.  *See Robertson v. Sullivan,* 979 F.2d 623, 625 (8th Cir.1992) (per curiam).  On review, our task is to determine if the Secretary's denial of disability is supported by substantial evidence.  42 U.S.C. § 405(g) (Supp.1995).  We have the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  *Id.*  If we determine that the errors in a prior decision would entitle the claimant to benefits that he has been denied, then we should remand the case for a reexamination of the prior closed application.  *See Jelinek v. Heckler,* 764 F.2d 507, 509-11 (8th Cir.1985).

In this case, we are limited in our review of the prior applications to the mischaracterization of Wolfe's educational

level as "limited" when the evidence indicates that the appropriate description, at the most, should have been "marginal." As discussed above, however, there is insufficient evidence in the record to support the third ALJ's finding that Wolfe possessed a marginal education. Therefore, the fact that the third ALJ's reconsideration of the merits of the prior applications constituted a *de facto* reopening of those decisions requires that on remand the Secretary must determine whether Wolfe's correct educational level, once established by sufficient evidence, would entitle him to benefits during the periods covered by the 1982 and 1986 decisions.[7] Because we find that the third ALJ in fact reopened the prior decisions, we do not address Wolfe's alternative arguments that his due process rights were violated or that there were errors on the faces of the prior decisions that require a reopening.

### III. CONCLUSION

Wolfe appeals the district court's judgement affirming the decision of the Secretary. We conclude that the district court erred in its determination that the third ALJ had not reopened the

---

[7]The application of a "marginal" educational level to Wolfe in the 1982 and 1986 decisions would not entitle Wolfe to benefits during that period. Under the grids, a person approaching advanced age, with a marginal educational level, and with a prior work experience of semi-skilled, transferable or non-transferable, is not disabled. 20 C.F.R. § 404, Subpart P, App. 2, Rules 202.11 & 202.12. If Wolfe is determined on remand to be illiterate, he will not fit squarely under the criteria in the grids. In that case, the ALJ should give "full consideration ... to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations," and vocational expert testimony most likely will be necessary. 20 C.F.R. § 404, Subpart P, App. 2, sec. 200.00(a).

prior decision of the Secretary, and it is necessary to remand the case to the district court with instructions to remand to the Secretary so that further findings of fact can be made with regard to whether or not Wolfe is illiterate. The determination of the district court that the portions of the decision of Secretary other than the discussion of Wolfe's educational level are supported by substantial evidence. Accordingly, we AFFIRM in part, VACATE in part, and REMAND.