[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13911
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 11, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:09-cv-00793-GAP-DAB

JUDYLEE C. JARRETT,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 11, 2011)

Before EDMONDSON, PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Judylee C. Jarrett appeals the district court's order affirming the administrative law judge's ("ALJ") denial of her application for Social Security Disability Insurance benefits ("DIB"), 42 U.S.C. § 405(g), and Supplemental Security Income ("SSI") benefits, 42 U.S.C. § 1383(c)(3). In her application, Jarrett alleged that she was disabled because of chronic depression, stress-related anxiety, and bulimia. Jarrett argues (1) that the ALJ's hypothetical questions to a vocational expert did not adequately account for her difficulty in maintaining concentration, persistence, and pace; (2) that good cause did not support the ALJ's decision not to give controlling weight to her treating physician's responses to a March 2007 questionnaire, and that the ALJ erred by giving great weight to the opinions of non-examining state consultants; and (3) that the Appeals Council erred by denying her request to recuse the ALJ on the basis of bias and unfair treatment, and by failing to investigate her claim adequately as required by SSA Publication No. 05-10071. After thorough review of the record and the parties' briefs, we affirm.

I.

Jarrett first argues that the ALJ's hypothetical questions to a vocational expert did not adequately account for her difficulty in maintaining concentration, persistence, and pace. In Social Security appeals, we review the decision of an

2

ALJ as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the Commissioner's legal conclusions de novo and consider whether the Commissioner's factual findings are supported by substantial evidence. Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). We are precluded from "deciding the facts anew, making credibility determinations, or re-weighing the evidence." Id.

"The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims." Id.

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

3

Doughty, 245 F.3d at 1278 (citations omitted).

At step five of the evaluation process, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). One manner of determining whether the claimant is able to perform other work is for the ALJ to ask a VE hypothetical questions "to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Winschel v. Comm'r of Soc. Sec., No. 10-10620, --- F.3d ----, 2011 WL 198372, at *3 (11th Cir. Jan. 24, 2011) (quotation marks omitted).

In this case, the ALJ's hypothetical questions adequately accounted for Jarrett's impairment in concentration, persistence, and pace. In one of the hypotheticals, the ALJ asked the VE to assume an individual with Jarrett's age,

education, and work experience who could only "understand, remember, [and] carry-out simple . . . tasks and concentrate for brief periods of time." By including that Jarrett had limitations in her ability to concentrate, this hypothetical question adequately accounted for the ALJ's finding that Jarrett had moderate difficulties in concentration, persistence, and pace. See White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009) (holding that a hypothetical adequately accounted for limitations in concentration, persistence, and pace where ALJ expressly referenced the claimant's inability to maintain attention and concentration). Jarrett claims that the ALJ failed to include in the hypothetical a specific time limitation on her ability to concentrate. The medical evidence in the record, however, did not support the use of a specific time period for which Jarrett could concentrate because the physician opinions addressing the issue referred only to "variable concentration" and Jarrett's ability to concentrate for only "briefer time periods."

Furthermore, an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies. See Winschel, --- F.3d at ----, 2011 WL 198372, at *3 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work

despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."). In this case, the ALJ's first hypothetical stated that the individual "could follow simple instructions" and "complete simple tasks," but "may have difficulty dealing with stress and detailed tasks." Notably, Dr. Eeltink, one of the non-examining consultants, concluded that despite a moderate degree of limitation in maintaining concentration, persistence, and pace, Jarrett was "able to follow simple instructions, complete simple tasks, make decisions, avoid hazards, and relate adequately to function in the workplace." Similarly, Dr. Adams, another non-examining consultant, found that Jarrett was "able to understand, remember, and carry out simple tasks," despite her moderate limitation in her ability to maintain attention and concentration for an extended period. Thus, the ALJ's restriction to simple instructions and simple tasks in the first hypothetical question sufficiently accounted for Jarrett's limitations in concentration, persistence and pace because, despite these limitations, the medical evidence in the record demonstrated that Jarrett retained the ability to follow simple instructions and complete simple tasks.

On these facts, we conclude that the ALJ's hypothetical questions both explicitly and implicitly accounted for Jarrett's impairment in concentration,

6

persistence, and pace.[1] Substantial evidence therefore supports the ALJ's finding that there were a significant number of jobs that Jarrett could perform in the national economy.

## II.

Jarrett next argues that good cause did not support the ALJ's decision not to give controlling weight to the responses that her treating physician, Dr. Mian, provided to a March 2007 questionnaire. She further contends that the ALJ erred by giving great weight to the opinions of non-examining state consultants. In determining whether a claimant is disabled, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see Winschel, --- F.3d at ----, 2011 WL 198372, at *2. But where the

---

[1] Our decisions in Richter v. Comm'r of Soc. Sec., 379 F. App'x 959 (11th Cir. 2010) (unpublished), and Winschel, --- F.3d at ----, 2011 WL 198372, are not to the contrary. In those cases, we held that an ALJ's hypothetical question that restricted the VE's inquiry to simple, routine tasks or unskilled work did not adequately account for the claimant's limitation in concentration, persistence, and pace. Richter, 379 F. App'x at 959, 961; Winschel, --- F.3d at ----, 2011 WL 198372, at *3. But here, unlike in Richter and Winschel, the ALJ stated explicitly in the hypothetical question that Jarrett had a limitation in her ability to concentrate for more than brief periods of time. We also recognized in Richter and Winschel that a hypothetical question could sufficiently account for such an impairment by including a restriction to simple or routine tasks if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite a limitation in concentration, persistence, and pace. Richter, 379 F. App'x at 961; Winschel, --- F.3d at ----, 2011 WL 198372, at *3. We found no such medical evidence in Richter, 379 F. App'x at 961, and Winschel, --- F.3d at ----, 2011 WL 198372, at *4, but as noted above, the record here supports such a finding in this case.

7

ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Moore, 405 F.3d at 1212.

The ALJ must give the opinion of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." Phillips, 357 F.3d at 1240 (quotation marks omitted); see Winschel, --- F.3d at ----, 2011 WL 198372, at *2. "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, --- F.3d at ----, 2011 WL 198372, at *2 (quoting Phillips, 357 F.3d at 1240–41). We have held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion. See Phillips, 357 F.3d at 1241.

Regulations require that an ALJ consider the opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. See id. § 404.1527(d)(3)-(4); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d. 1155, 1158, 1160 (11th Cir. 2004) (holding that

the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(d)(4). The opinion of a non-examining physician is therefore entitled to little weight when it contradicts the opinion of an examining physician. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). But where a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's report. See Edwards v. Sullivan, 937 F.2d 580, 584–85 (11th Cir. 1991).

Here, good cause supported the ALJ's decision not to give controlling weight to Dr. Mian's opinion, as expressed in the March 2007 questionnaire, that Jarrett had marked difficulties in several mental abilities and was unable to perform any type of work on a sustained basis. The ALJ articulated specific reasons for not giving Dr. Mian's opinion controlling weight, noting that the opinion was inconsistent with Jarrett's treatment records and her ability to perform work between 1999 and 2004. Indeed, Dr. Mian's treatment records show numerous instances in which he indicated that Jarrett's medications were working, she was satisfied with the medications, her condition had improved, and she was

9

stable. Additionally, Dr. Jacobs reported Jarrett's global assessment of functioning ("GAF") score in the range of 61 to 70, which reflected mild symptoms with some difficulty in social and occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (noting that GAF scores between 61 and 70 reflect mild symptoms, with some difficulty in social and occupational functioning). Dr. Porcincula also reported that Jarrett's GAF was 60 to 65 when she was discharged after being involuntarily committed and that her concentration and attention were adequate.

The evidence in the record regarding Jarrett's daily activities also contradicts Dr. Mian's March 2007 opinion. Jarrett worked part time at a number of jobs since she quit her job as a front desk concierge in 1998, she volunteered two days a week for four hours at a hospital, and she was able to help care for her elderly father by performing household chores. See Phillips, 357 F.3d at 1241 (holding that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion). For these reasons, the ALJ had good cause to not give Dr. Mian's March 2007 opinion substantial or considerable weight.

The ALJ also did not err in giving significant weight to the opinions of the state agency medical consultants, Dr. Adams and Dr. Eeltink, regarding Jarrett's

functional limitations. Dr. Adams's and Dr. Eeltink's opinions were consistent with Dr. Mian's treatment records showing that Jarrett's condition was stable and with the GAF scores as determined by Dr. Jacobs and Dr. Porcincula. See Crawford, 363 F.3d at 1158, 1160. Notably, the only opinion that Jarrett claims contradicts Dr. Adams's and Dr. Eeltink's assessments is Dr. Mian's responses in the March 2007 questionnaire. However, as discussed above, the ALJ appropriately concluded that Dr. Mian's March 2007 opinion should be given little weight because it was contradicted by his and Dr. Jacob's treatment records. Because Dr. Adams's and Dr. Eeltink's opinions did not otherwise contradict Dr. Mian's or any other doctor's treatment records, the ALJ did not err in relying on the reports of these non-examining physicians. See Edwards, 937 F.2d at 584–85.

For all these reasons, we conclude that the ALJ did not err in giving Dr. Mian's opinion little weight and instead crediting the opinions of the state agency consultants, because their opinions were supported by the record.

## III.

Finally, Jarrett contends that the Appeals Council erred by (1) denying her request to recuse the ALJ on the basis of bias and unfair treatment and (2) failing to investigate her claim adequately, as required by SSA Publication No. 05-10071. Jarrett asserts that the ALJ was biased against her because her counsel had filed

misconduct complaints against the ALJ in unrelated cases. The Social Security Act requires that a claimant's hearing be both full and fair. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). The ALJ plays a "crucial role in the disability review process" and has a duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to each claim." Id. at 1401. Because the ALJ's decision will typically be the final word given our standard of review, the ALJ's impartiality is "integral to the integrity of the system." Id. The ALJ thus must "not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." Id. at 1400 (quoting 20 C.F.R. § 404.940).

If a claimant fears that a particular ALJ will not provide a fair hearing, she must notify the ALJ at the "earliest opportunity." 20 C.F.R. § 404.940. If the ALJ then declines to recuse herself, the claimant may seek reconsideration by raising the issue before the Appeals Council. Id. The current version of SSA Publication No. 05-10071 provides:

> If you think any ALJ treated you unfairly, you should tell us about it and ask us to look into it. You can ask even while we are deciding your claim for benefits.
>
> . . .

12

> Someone who has not been handling your claim before will look into the information you gave us in the complaint. You will be advised when the matter is closed.
>
> If you also appealed the decision on your claim and included information about your complaint, the Appeals Council will address your complaint when responding to your appeal.

SSA Pub. No. 05-10071 (2010).

Contrary to Jarrett's assertion, the Appeals Council correctly followed these procedures for handling claims of bias on appeal and found that there was no evidence of bias or unfair treatment by the ALJ. Jarrett presented her claim to the Appeals Council that she did not receive a full and fair hearing before the ALJ presiding over the case. 20 C.F.R. § 404.940. The Appeals Council addressed her complaint of bias in its notice of action. The Appeals Council noted that it had reviewed Jarrett's allegations and studied the entire record, including the hearing decision and hearing testimony. The Appeals Council also informed Jarrett of the results of its review, stating that it found no evidence that the ALJ was biased or that the hearing was unfair. See SSA Pub. No. 05-10071 (2010). Furthermore, Jarrett has failed to allege any specific instances of the ALJ's bias in her case. We therefore conclude that Jarrett has failed to show either that her disability hearing was not full and fair or that the Appeals Council did not follow its procedures in reviewing her bias claim.

IV.

The ALJ did not commit any legal error in determining that Jarrett was not disabled, and substantial evidence supports that conclusion. Further, Jarrett has failed to establish that the Appeals Council erred in reviewing and adjudicating her bias claim. For all of these reasons, we affirm.

**AFFIRMED.**