[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11429
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-24744-FAM


JOEL ROMERO,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 31, 2018)

Before WILLIAM PRYOR, BRANCH and FAY, Circuit Judges.

PER CURIAM:

Joel Romero appeals the order that affirmed the denial of his applications for supplemental security income and disability insurance benefits. 42 U.S.C. §§ 1383(c)(3), 405(g). Romero argues that the administrative law judge erred by failing to assign a weight to all treatment notes about his physical and mental limitations, discounting the opinion of his treating psychiatrist, failing to consider his combination of impairments, and discrediting his testimony that his limitations were disabling. We affirm.

The administrative law judge was not required to state what weight he assigned to medical records that did not qualify as medical opinions. An administrative law judge is obligated to assign a weight only to a statement that constitutes a medical opinion. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). When Romero's administrative proceeding occurred, the governing regulation defined a "medical opinion" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011), we concluded that the claimant's treatment notes constituted medical opinions because the notes contained "a description of [his] symptoms, a diagnosis, and a judgment about the severity of his impairments." *Id.*

2

at 1179. The medical records that Doctors John Dylewiski, Jorge Sanchez-Masiques, Tony Diaz, Juan Quintana, Juan Cueto, and John Catano prepared were not medical opinions.

The medical records failed to address Romero's ability to work. For example, Dr. Dylewski's consultation records mention only Romero's physical complaints, his medical history, the results of his physical examinations and laboratory tests, and recommendations for and responses to treatment. Dr. Cueto's medical records state that he "advised [Romero] of Physical activity/exercise instructions" and to change his diet and check his pacemaker, but those statements do not reflect what activities Romero can or cannot perform. Romero also cites to a page in the record where a Senior FCR with Boston Scientific Corporation reports that Romero's pacemaker is functioning normally, but that report also states no medical opinion.

To the extent that the administrative law judge failed to state with particularity the weight assigned to the medical opinion of Romero's treating physician, Dr. Bernhard Brijbag, the error is harmless because it was consistent with the administrative law judge's determination that Romero had the residual functionality capacity to perform light work. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to an administrative law judge's "erroneous statements of fact"). The administrative law judge stated that he

3

considered the information in Dr. Brijbag's treatment notes on the five occasions

he treated Romero between October 2011 and October 2012. Although the

administrative law judge did not specifically address Dr. Brijbag's June 6, 2011,

recommendation that Romero "avoid extreme conditions" and "avoid strenuous

activity," "there is no rigid requirement that the ALJ specifically refer to every

piece of evidence in [the] decision, so long as . . . [that] decision . . . is not a broad

rejection" of evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The administrative law judge accounted for the restrictions Dr. Brijbag imposed in

finding that Romero "was capable of performing light work with postural and

environmental limitations."

Substantial evidence supports the decision to discount the opinion of

Romero's treating psychiatrist, Dr. Jose Gamez, that Romero's depressive disorder

was disabling. The administrative law judge was entitled to discount Dr. Gamez's

opinion in December 2011 that Romero had difficulty following rules, exercising

judgment, interacting with supervisors, functioning independently, and maintaining

attention as inconsistent with the doctor's treatment notes for the preceding year. In

September and November 2010, Dr. Gamez recorded that Romero was fully

communicative and exhibited intact language skills and associations, logical

thinking, appropriate thought content, and was fully oriented, and the doctor's

notes in June and August of 2011 state that Romero continued to exhibit cognitive

functioning in the normal range. The administrative law judge also was entitled to disregard Dr. Gamez's opinion that Romero was disabled in January 2013 when the doctor's treatment notes stated that Romero was functioning in the borderline range beforehand in September 2012 and afterwards in March 2013. Furthermore, the doctor's opinions conflicted with the findings of two state psychologists that Romero could follow simple instructions and could manage at least basic, and likely complex, mental demands of work.

The administrative law judge considered the combination of Romero's impairments in determining whether he was disabled. In his decision, the administrative law judge stated that he considered Romero's "severe impairments [ of] depressive disorder, congenital equiovarus deformity, asthma, disc space narrowing at C5-6 of the cervical spine, left ventricular hypertrophy and trace tricuspid regurgitation, and status post pacemaker placement" and found that those caused him "more than minimal functional limitations in his ability to engage in work-related activities." The administrative law judge did not specifically mention that Romero suffered from carotid sinus hypersensitivity/carotid sinus syndrome, chronic supraventricular tachycardia and atrial tachycardia, bilateral cervical radiculopathy and bilateral carpal tunnel syndrome, and obesity, but the administrative law judge addressed the symptoms of those conditions to the extent they were "consistent with the objective medical evidence and other evidence." *See*

*Dyer*, 395 F.3d at 1211. The administrative law judge mentioned that, the day after "[a]n electrophysiologic study showed sinus hypersensitivity," Romero "underwent successful pacemaker implantation." And the administrative law judge highlighted that, after surgery, Dr. Sanchez-Masiques reported that Romero's "pulmonary function test was essentially normal" and Dr. Catano reported that Romero had "regular sinus rhythm of the heart." The administrative law judge also mentioned that Romero testified he had "decreased grip strength," yet Doctors Jorge and Catano reported, respectively, that Romero's "motor strength was 5/5 throughout" and that he "had 5/5 grip strength bilaterally." As to Romero's obesity, the administrative law judge observed that Dr. Sanchez-Masiques reported in July 2010 that Romero exhibited no active pulmonary disease and in October 2010 that a sleep study revealed no obstructive sleep apnea. The administrative law judge also addressed Romero's obesity in observing that, in September 2011, Dr. Catano recorded that Romero walked with a normal gait and could reposition from a chair and an examining table with little difficulty.

Substantial evidence supports the finding that Romero has the residual functional capacity to perform light work. The administrative law judge considered all relevant record evidence, which included Romero's severe impairments and other limitations that were supported by objective medical findings. The state consultants' opinions that Romero had the ability to complete simple, routine tasks

were consistent with the evidence of record, and Romero does not challenge the administrative law judge's decision to give those opinions "considerable weight." Romero argues that the administrative law judge failed to "incorporate all of the[] [state consulants'] noted limitations," but the consultants' findings that Romero had "mild" difficulties in social functioning and "moderate" restrictions in daily living, maintaining concentration and pace, timely completing detailed instructions, arriving punctually, and completing a workday and workweek were accounted for in the determinations that he could fulfill the basic demands of unskilled work.

The administrative law judge was entitled to discredit Romero's testimony about the limiting effects of his impairments. Although Romero said that he could sit for only eight- to ten-minute periods, had difficulty concentrating, and suffered memory lapses, he remained seated throughout his administrative hearing and responded to questions promptly and concisely. *See Norris v. Heckler*, 760 F.2d 1154, 1157–58 (11th Cir. 1985) ("the ALJ may consider a claimant's demeanor among other criteria in making credibility determinations"). His testimony about mental limitations also conflicted with Dr. Gamez's medical reports that Romero had responded well to conservative treatment and retained normal cognitive function, memory, and speech and with the findings by the state psychological consultants that Romero had unlimited abilities to understand and recall short and

7

simple instructions and repetitive tasks. *See* 20 C.F.R. § 416.929(c)(3) (evaluating severity of symptoms based on information from medical sources and effectiveness of treatment); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Romero's complaints of incapacitating fatigue and melancholy were inconsistent with his testimony that he drove to visit his mother and to medical appointments. And his complaints were inconsistent with medical records from Doctor's Hospital in January 2011 that his physical examination was essentially normal and from Dr. Catano in September 2011 that Romero could stand for 10 to 15 minutes, walk a few blocks with minimal difficulty, and sit and converse normally. *See id.* (considering "how the symptoms may affect your pattern of daily living"). Substantial evidence supported the administrative law judge's finding that Romero's subjective assessment of his limitations conflicted with objective medical evidence and with his demeanor and testimony during the hearing.

We **AFFIRM** the denial of Romero's applications for benefits.