[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10800
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cv-00217-SGC


LISA HOWARD,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 8, 2019)


Before WILSON, EDMONDSON, and HULL, Circuit Judges.

PER CURIAM:

Lisa Howard ("Claimant") appeals the district court's order affirming the Social Security Commissioner's denial of her application for disability insurance benefits ("DIB") and for supplemental security income ("SSI"), pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). No reversible error has been shown; we affirm.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this limited standard of review, we may not make fact-findings, re-weigh the evidence, or substitute our judgment for that of the Administrative Law Judge ("ALJ"). Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). We review de novo the district court's determination about whether substantial evidence supports the ALJ's decision. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

2

A person who applies for DIB or for SSI benefits must first prove that she is disabled. See 20 C.F.R. §§ 404.1512, 416.912(a). The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must evaluate (1) whether the claimant engaged in substantial gainful work; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals an impairment in the Listings of Impairments; (4) whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) whether, in the light of the claimant's RFC, age, education, and work experience, there exist other jobs in the national economy the claimant can perform. Id.

Applying the five-step evaluation process, the ALJ first determined that Claimant had engaged in no substantial gainful activity since 24 November 2010: the alleged onset date. The ALJ then determined that Claimant had four severe impairments: borderline intellectual functioning, generalized anxiety disorder, obesity treated with gastric bypass, and mild degenerative joint disease/arthritis in combination with obesity. The ALJ determined that -- although Claimant could no longer perform her past relevant work -- she had the RFC to perform a reduced range of light work. The ALJ determined that Claimant was "limited to simple,

3

routine work" with some physical limitations and was "better suited for work that does not require reading of instructions." Considering Claimant's age, education, work experience, and RFC, the ALJ determined that Claimant was capable of performing other work in the national economy. Accordingly, the ALJ concluded that Claimant was not disabled.

I.

As an initial matter, Claimant first contends that the ALJ de facto reopened Claimant's 2008 application for DIB by considering evidence submitted to the Appeals Council in that earlier case. We reject this argument.

Generally speaking, federal courts lack jurisdiction over the Commissioner's refusal to reopen a claim: that decision is no "final decision" within the meaning of 42 U.S.C. § 405(g). Cash v. Barnhart, 327 F.3d 1252, 1256 (11th Cir. 2003). Subject matter jurisdiction may exist, however, when an earlier social security claim is de facto reopened, such as when the claim is reconsidered on the merits at the administrative level. Id.

In the ALJ's June 2013 decision -- the decision underlying this appeal -- the ALJ did nothing to reopen de facto Claimant's 2008 application for DIB. The ALJ

4

made clear that the June 2013 decision pertained only to whether Claimant was disabled on or after the alleged onset date of 24 November 2010. The ALJ described the procedural background of Claimant's earlier proceedings but made no determination about the merits of Claimant's 2008 application. To the extent the ALJ considered Claimant's medical records from before November 2010, the ALJ said expressly that it was for "historical purposes only." An ALJ's review of a claimant's prior medical examination from a prior application -- by itself -- is no reconsideration of the prior application on the merits. See Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996). Also, to the extent the ALJ considered new evidence -- evidence that was not considered by the Appeals Council as part of Claimant's 2008 application proceedings -- no reopening of the prior application occurred. See Brown v. Sullivan, 921 F.2d 1233, 1237 (11th Cir. 1991) (if the ALJ "merely considers newly proffered evidence without reconsidering the merits of the previously denied application, then he has not reopened that application.").

II.

5

We next consider Claimant's challenges to the Commissioner's denial of her current applications for DIB and SSI. Claimant contends that the ALJ failed to afford proper weight to the 3 February 2011 opinion of her treating physician, Dr. Maddox. Claimant also contends that the ALJ failed to state clear grounds for giving little or no weight to the opinions of Dr. Teschner and of Dr. Wilson.

In assessing a claimant's RFC, the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179. In determining the appropriate weight to give a medical opinion, the ALJ considers -- among other things -- these factors: (1) the examining relationship, (2) the treatment relationship, (3) whether the opinion is well-supported, and (4) whether the opinion is consistent with the record. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ must give a treating physician's medical opinion "substantial or considerable weight" unless the ALJ clearly articulates good cause for discrediting that opinion. Winschel, 631 F.3d at 1179. Good cause exists when: (1) the "treating physician's opinion was not bolstered by the evidence;" (2) the "evidence

6

supported a contrary finding;" or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id.

About Claimant's first argument, the ALJ articulated good cause for discounting Dr. Maddox's 3 February 2011 opinion, including that the opinion was conclusory, was unsupported by clinical or laboratory findings, and was inconsistent with the objective medical evidence. The ALJ's reasons are supported by substantial evidence in the record. Dr. Maddox's February 2011 opinion consisted of a multiple-choice "clinical assessment of pain" form, with no room for Dr. Maddox to explain how medical evidence supported his responses. The record also evidences that Dr. Maddox rarely examined Claimant or performed clinical testing and -- instead -- relied mainly on Claimant's subjective reports of pain as a basis for treatment. Further, Dr. Maddox's opinion that physical activity would increase Claimant's pain was inconsistent with objective medical evidence, including Claimant's past MRIs that showed only mild or minor problems that did not worsen significantly between 2004 (when Claimant was still working) and 2010. Dr. Maddox's assessment also conflicted with the assessment of the state agency medical consultant that Claimant was capable of light exertional work: an assessment that was based on clinical findings in the record.

7

We next address Claimant's arguments about the opinions of Dr. Teschner and Dr. Wilson. Contrary to Claimant's contention on appeal, the ALJ explained in great detail the reasons for giving the opinions of Dr. Teschner and Dr. Wilson little or no weight. And those reasons are supported by the record. First, we note that both doctors were one-time examiners and, thus, their opinions are "not entitled to great weight" automatically. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004). Moreover, to the extent that Dr. Teschner and Dr. Wilson sought to define Claimant's functional limitations, those opinions are entitled to no weight because Claimant's RFC is a legal conclusion reserved for the ALJ. See 20 C.F.R. §§ 404.1527(d), 416.927(d).

Substantial evidence supports the ALJ's conclusion that Dr. Teschner's opinion should be rejected as conclusory, internally inconsistent, and unsupported by the record. Dr. Teschner's opinion about Claimant's physical limitations was inconsistent with Claimant's own hearing testimony, with Dr. Teschner's own medical findings, and with the record as a whole. For example, although Dr. Teschner observed normal grip and pinch strength in Claimant's hands, as well as her ability to make a tight fist, he concluded that Claimant's manual dexterity was "probably abnormal" with multiple limitations. Dr. Teschner also observed that Claimant's range of motion, reflexes, and motor strength were normal or slightly

8

limited, but then opined that Claimant had severe limitations in her ability to move, hold weight, and use her arms and legs to push/pull. The limitations described by Dr. Teschner were also inconsistent with Claimant's reports that she could cook, clean, walk to her parents' house, do laundry, load the dishwasher, make her bed, brush and feed her dogs, and walk for exercise. Moreover, Dr. Teschner's list of twenty diagnoses included several conditions that had either been treated successfully or ruled out by prior doctors, further supporting the ALJ's conclusion that Dr. Teschner's opinions were contrary to the record.

About Dr. Wilson's opinion, the ALJ rejected Dr. Wilson's diagnosis of mental retardation, concluding that it was inconsistent with the record. Among other things, Claimant testified that she worked in several jobs that required her to keep a production log, that she pays her own bills, that she shops and cooks for her family, and that she enjoys reading the Bible and mystery novels. The ALJ noted that Claimant's testimony conflicts with Dr. Wilson's conclusions that Claimant was barely literate and could not keep up in a work environment, maintain employment, or manage her own finances. Dr. Wilson's diagnosis was also inconsistent with his own evaluation of Claimant, which showed that Claimant's verbal and comprehension scores were within the average range. The ALJ also afforded greater weight to the opinion of an independent mental health expert that -

9

- based on Claimant's IQ scores and adaptive functioning -- Claimant had borderline intellectual function and not mental retardation.

Substantial evidence supports the Commissioner's denial of DIB and SSI benefits; we affirm.

AFFIRMED.

10