[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11837
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cv-81398-BB

LAUREN J. HOROWITZ,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 5, 2017)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lauren Horowitz appeals the district court's order affirming the Commissioner of Social Security's decision denying her application for disability insurance benefits. On appeal, she argues that the Commissioner's denial of benefits was erroneous because the administrative law judge ("ALJ") improperly assigned little weight to the opinions of her treating psychologist and determined that her testimony about the intensity, persistence, and limiting effect of her symptoms was not credible. She also argues that the Appeals Council improperly denied review and refused to consider additional evidence that she submitted for the first time to the Appeals Council. After careful consideration, we affirm the district court's judgment in favor of the Commissioner.

## I.    FACTUAL BACKGROUND

Horowitz filed for disability benefits, alleging that she became disabled as of December 2011, on the basis that she suffered from numerous mental and physical impairments, including post-traumatic stress disorder, depression, obsessive compulsive disorder, anxiety, and fibromyalgia. She requested and received a hearing before an ALJ.

2

## A.    The ALJ Hearing

At the hearing, Horowitz testified that she was no longer able to work because of her physical and mental impairments.  With respect to her physical condition, she testified that she suffered from fibromyalgia.  She described how she experienced pain throughout her body including in her jaw, neck, back, and shoulders.  She also testified that she was further injured when she was abducted and held hostage for two months.  She claimed that her right leg was injured in the abduction and that as a result she needed a cane to walk.  She also stated that she suffered from other physical ailments including migraines, hyperhidrosis (excessive sweating), and irritable bowel syndrome.  She also testified that she was unable to sleep, had restless sleep, or experienced too much sleep.  With respect to her mental condition, she asserted that her depression left her unable to leave her home.  She also explained that she had trouble concentrating and remembering things and heard noises other people could not hear.

Horowitz described how her injuries impacted her daily life.  She explained that she spent most days in bed watching television.  Several days a week, she was unable to get out of bed because of the pain, and about two days a week she was unable to walk.  She testified that she bathed infrequently, ate only frozen food to avoid cooking, depended on family to do her laundry, and was unable to do chores around her house.  Horowitz stated that her only hobby was playing with her cat.

3

She further claimed that as a result of her injuries she could lift no more than five pounds, stand for only ten minutes at a time, and sit for only ten minutes at a time.

Horowitz also presented medical evidence to the ALJ. The medical records about her physical condition reflected that she had suffered from fibromyalgia and pain since 2005, as well as hyperhidrosis. Horowitz claimed that she was disabled as of December 2011, but the medical evidence reflected that she received no treatment for her physical injuries from December 2011 until September 2013. There were records of medical examinations by non-treating physicians during this time who examined Horowitz to determine whether she was disabled.

One of these examinations was performed by Dr. Nader Daryace in December 2012. Dr. Daryace noted that Horowitz was complaining of pain in her neck and lower back but experienced no weakness or numbness. Horowitz told Dr. Daryace that she was able to do her own grocery shopping, cooking, cleaning, laundry, and gardening. Dr. Daryace's examination showed that Horowitz had a full range of motion except in her cervical spine, a normal gait, normal reflexes, and 5/5 grip strength.

About three months later, Dr. Steven Kanner examined Horowitz in connection with her disability application. Dr. Kanner noted that Horowitz reported that she suffered from arthritis and was in pain all the time. She complained about neck and back pain, claiming that her back pain sometimes

radiated down her right leg.  Horowitz further reported that she could only sit or stand for 15 minutes before the pain worsened.  In his examination, Dr. Kanner observed that Horowitz had multiple tender trigger points and a decreased range of motion of her cervical and thoracolumbar spine.  After observing that she had no motor reflex deficits and ambulated easily and without assistive devices, he opined that she could sit, stand, and walk without difficulty.  He further noted that she had extensive psychiatric issues.

Several months later, in September 2013, Horowitz was treated by Dr. Howard Busch, a rheumatologist.  Horowitz was referred to Dr. Busch by another physician for evaluation of her pain.  Dr. Busch's notes show that Horowitz complained to him about pain in her joints and neck as well as leg cramps and achiness.  Dr. Busch noted that he believed that her problems were not caused by arthritis and that her sleep disturbances were contributing to her pain and fatigue. He indicated that further investigation was required to differentiate or demonstrate illness.  Dr. Busch recommended that Horowitz undergo several laboratory tests. He also prescribed medication for Horowitz's pain and to help her sleep.

About a month later, Horowitz returned to Dr. Busch for a follow-up visit. He noted that her laboratory test came back essentially normal.  Because she continued to experience pain, he prescribed her a narcotic and additional medication to help her sleep.  Although Dr. Busch recommended that Horowitz

return for a follow up appointment in a few weeks, there are no other medical records reflecting treatment from Dr. Busch.

With regard to her mental condition, Horowitz presented medical records for treatment she received from the Jerome Golden Center for Behavior Health. These records show that Dr. Sultana, a psychiatrist, treated her in five appointments over the course of five months. Dr. Sultana diagnosed Horowitz with post-traumatic stress disorder, a mood disorder, opioid disorder, and benzodiazepine dependence. Dr. Sultana's records reflect that each appointment was for medication management and lasted only 15 minutes. Dr. Sultana's treatment notes reflect that Horowitz reported experiencing anxiety, anger, flashbacks, and nightmares and that she was pulling out her eyelashes. Her notes also indicated that after a few appointments Horowitz's affect and mood improved.

While treating Horowitz, Dr. Sultana completed a Treating Source Mental Status Report. In the report, Dr. Sultana described Horowitz as having a depressed mood and affect but found that her thought process was goal-directed; her concentration was fair; and she was oriented to time, place, and persons. But at the end of the report, Dr. Sultana opined that Horowitz's memory and concertation was impaired. She also stated that Horowitz was incapable of sustaining work activity for eight hours a day. Although the report asked Dr. Sultana to provided

6

examples of behavioral objective data that supported her opinion, she cited no such data.

Other records from the Jerome Golden Center show that after Horowitz completed five appointments with Dr. Sultana, she had three other medication management appointments with other providers. Horowitz went several months between these appointments.

Other evidence before the ALJ about Horowitz's mental health status came from a mini-mental status exam that Dr. Daryace performed when he examined her. He reported that Horowitz was alert and oriented; that she had intact cognitive functions, good judgment and insight, and a logical thought process; that she could recall five of five objects after 20 minutes; and that she could perform two-step instructions without difficulties. In addition, two other state agency psychologists who reviewed Horowitz's records (but neither treated nor examined her) opined that based on their review Horowitz could understand, remember, and carry out simple tasks; relate adequately to co-workers and supervisors; and adapt to simple changes and avoid hazards in a routine work environment.

## B.    The ALJ's Decision

After the hearing, the ALJ denied Horowitz's application for benefits. The ALJ concluded that Horowitz was not engaged in substantial gainful activity and had severe impairments including lumbar and cervical spine disorder, chronic pain

7

syndrome, fibromyalgia, myofascitis, post-traumatic stress disorder, and mood disorder. But the ALJ found that Horowitz's impairments did not meet or medically equal the severity of a listed impairment.

The ALJ then found that Horowitz had the residual functional capacity to stand or walk for six hours a day, sit for six hours a day, lift or carry and push or pull up to 20 pounds occasionally and up to ten pounds frequently. The ALJ further concluded that Horowitz could understand, remember, and carry out simple tasks and job instructions; sustain concentration and persistence for two-hour periods; and have brief, superficial interactions with supervisors, coworkers, and the general public.

The ALJ found that Horowitz's testimony about her symptoms was not credible. Although Horowitz's symptoms could reasonably be expected to produce her pain or other symptoms, the ALJ found that her testimony about the intensity, persistence, and limiting effects of her symptoms was not entirely credible. With respect to her physical impairments, the ALJ found that the record did not support that Horowitz's physical injuries were as disabling as she claimed. The ALJ noted that the examinations of Horowitz did not reveal ineffective ambulation, abnormal gait, significant decreases in her range of motion, or reflex abnormalities. The ALJ also emphasized that Horowitz's examinations included no recommendations of invasive treatment.

8

Similarly, the ALJ found that Horowitz's mental limitations were not as disabling as she alleged. The ALJ pointed out that Dr. Sultana's treatment notes showed that after a few appointments, Horowitz's affect and mood had improved. The ALJ noted that despite claiming disabling mental symptoms, Horowitz's mental status exams were conservative in nature, reflecting that although there were some deficits, she had a goal-oriented thought process, appropriate orientation, and fair memory. The ALJ also noted that a consulting exam, which included a mini-mental status exam, showed that Horowitz had good judgment and insight, a functioning memory, and the ability to follow two-step directions.[1] The ALJ also relied on the fact that Horowitz's appointments had not become more frequent over time due to increasing symptoms, changes in medication, changes in clinical signs, or test results.[2] Given the limited treatment that Horowitz received for both her physical and mental impairments, the ALJ noted that she had not generally received the type of medical treatment that one would expect for a totally disabled individual.

The ALJ also addressed the weight it should assign to the providers' opinions assessing Horowitz's residual functional capacity. The ALJ generally gave controlling weight to the assessments of Horowitz's treating doctors but gave

---

[1] Although the ALJ stated that Dr. Kammer performed this examination, the record clearly reflects that Dr. Daryace performed it.

[2] The ALJ also found that Horowitz's credibility was further reduced because she received unemployment benefits during the relevant period of disability.

9

little weight to Dr. Sultana's opinions.  The ALJ explained that Dr. Sultana's opinions were not consistent with the record as a whole or the objective medical evidence in the file revealing Horowitz's conservative mental status exam findings.

Given Horowitz's residual functional capacity, the ALJ found that Horowitz was unable to continue her past relevant work as a sales clerk.  But the ALJ found that given Horowitz's residual functional capacity she could work as a laundry worker or mail clerk.  Because there were a significant number of jobs in the national economy that she could perform, the ALJ found that Horowitz was not disabled.

## C.    The Appeals Council's Review

Horowitz sought review of the ALJ's decision from the Appeals Council. She submitted additional evidence to the Appeals Council, including two questionnaires completed by Dr. Busch, her treating rheumatologist.  Dr. Busch completed the questionnaires approximately three months after the ALJ rendered her decision but gave no indication whether his opinion was based on his two previous appointments, which occurred more than nine months earlier, or a subsequent appointment that occurred after the ALJ rendered her decision.

In these questionnaires, Dr. Busch opined that Horowitz was unable to work. In the first questionnaire, Dr. Busch stated that Horowitz could lift or carry no more than 5 pounds, could stand or walk for zero hours a day, and could sit for

zero hours a day.  He further explained that she could never climb, balance, stop, crouch, kneel, or crawl.  Although the questionnaire asked Dr. Busch to identify the medical findings that support his opinions, he provided no such medical findings.

In the second questionnaire, which focused on fibromyalgia, Dr. Busch opined that Horowitz could not work.  He explained that she had issues with chronic pain and that she was on chronic pain medications.  He indicated that Horowitz's pain has lasted for three or more months and the pain was located in 11 or more pressure points.  He explained that she also had stiffness, irritable bowel syndrome, tension headaches, paresthesias, sleep disturbance, chronic fatigue, memory loss, and inability to ambulate effectively.

The Appeals Council denied Horowitz's request to review the ALJ's decision.  The Appeals Council explained that it had not considered Dr. Busch's questionnaires because they concerned a later time period.

## D.    District Court Proceedings

Horowitz then filed an action in federal district court, asking the court to reverse the Commissioner's decision.  After briefing, the magistrate judge prepared a report and recommendation that the district court affirm the Commissioner's decision.  Horowitz objected.  The district court overruled Horowitz's objections,

adopted the magistrate judge's recommendation, and affirmed the Commissioner's decision. Horowitz has appealed that decision.

## II.    STANDARD OF REVIEW

We review the Commissioner's decision to determine if it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Even if we find that the evidence preponderates against the [] decision, we must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211. Our limited review precludes us from "deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.*

Furthermore, we review the Appeals Council's decision not to consider additional evidence that Horowitz submitted *de novo*. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

## III.    LEGAL ANALYSIS

An individual claiming disability benefits must prove that she is disabled. 42 U.S.C. § 423(a)(1)(E). To determine whether a claimant is "disabled," the ALJ applies a sequential process and examines whether the claimant: (1) is engaging in

12

substantial gainful activity; (2) has a severe and medically determinable impairment; (3) has an impairment or combination of impairments that satisfies the criteria of a "listing"; (4) can perform her past relevant work in light of her residual functional capacity; and (5) can adjust to other work in light of her residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4).

On appeal, Horowitz asserts that the ALJ erred in analyzing her residual functional capacity because the ALJ failed to give proper weight to the opinion of her treating psychologist, Dr. Sultana, and improperly discounted her testimony regarding her pain and other symptoms.  She also argues that the Appeals Council erred when it refused to consider the additional materials from Dr. Busch.  We consider these arguments in turn.

## A.    The ALJ Did Not Err in Giving Little Weight to Dr. Sultana's Opinion.

Horowitz first contends that the ALJ erred in determining her residual functional capacity by giving little weight to the opinion of her treating psychiatrist, Dr. Sultana.  We disagree.

The ALJ must give a treating physician's opinion "substantial or considerable weight unless good cause is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1527(c)(2).  Good cause exists when: (1) the opinion

"was not bolstered by the evidence," (2) the "evidence supported a contrary finding," or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41.  We have explained that "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.  *Moore*, 405 F.3d at 1212.

Horowitz contends that the ALJ erred in failing to give Dr. Sultana's opinions substantial or considerable weight.  But the ALJ explained that Dr. Sultana's opinions were not entitled to controlling weight because they were inconsistent with the record as a whole or the objective medical evidence in the record.  Substantial evidence supports the conclusion.  Although Dr. Sultana opined that Horowitz's mental impairments left her unable to work, the record reflects that Dr. Sultana provided conservative mental health treatment, which consisted only of 15-minute medication management appointments.  The conservative and routine nature of this treatment plan suggests that Horowitz's impairments—while significant—were not so severe that she could not perform any job duties.  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)

14

(recognizing that a physician's conservative medical treatment for a particular condition may negate a claim of disability).[3]

Dr. Sultana's opinion that Horowitz's concentration was impaired was contradicted by the medical evidence in the record.  First, it was contradicted by Dr. Sultanta's own records, which indicated that Horowitz's concentration was fair with no noted impairments.  In addition, the opinion was contradicted by Dr. Daryace's mini-mental status exam, which showed that Horowitz's memory was intact.  Viewing this evidence together, we conclude that the ALJ's conclusion that Dr. Sultana's opinions were contradicted by other evidence is supported by substantial evidence.

We also observe that the ALJ could have disregarded Dr. Sultana's opinions on the basis that they were wholly conclusory.  Although Dr. Sultana opined that Horowitz was unable to work and that her concertation was impaired, Dr. Sultana gave no explanation to support these opinions, even though the form that Dr.

---

[3] We pause to note that if a claimant failed to seek treatment altogether or comply with a course of treatment prescribed by a provider, an ALJ may not rely on the lack of treatment or noncompliance to conclude that claimant was not disabled.  An ALJ is prohibited from drawing "any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."  Social Security Regulation 96-7p (SSR 96-7) at 7; *see Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015).  As such, an ALJ must consider evidence showing that the claimant is unable to afford medical care before denying benefits based upon the claimant's non-compliance with prescribed care. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  But the ALJ could consider that while treating Horowitz, Dr. Sultana did not recommend a more frequent or intense treatment plan than monthly medication management appointments.

15

Sultana used asked her to provide behavioral objective data that supported them. After careful consideration, we simply cannot say that the ALJ erred in assigning little weight to Dr. Sultana's opinions.[4]

## B.    The ALJ Did Not Err in Determining that Horowitz Was Not Credible.

We must next consider whether the ALJ erred in finding that Horwitz's subjective complaints about the intensity, persistence, and limiting effects of her symptoms were not credible.  Horowitz testified before the ALJ about her physical and emotional impairments.  She described the pain that she experienced as a result of her fibromyalgia and how her depression left her unable to leave her house most days.  She also explained that she walked with a cane because of injuries she suffered to her right leg when she was abducted.  Although Horowitz asserts that the ALJ erred by rejecting her subjective description of her symptoms, given our deferential standard of review, we discern no error.

When a claimant attempts to establish a disability through her own testimony concerning pain or other subjective symptoms, we require "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined

---

[4] Horowitz also argues that the case should be remanded to the ALJ because it is impossible to determine from the ALJ's opinion whether she assigned significant weight or little weight to Dr. Sultana's opinions.  Certainly, remand is required if we are "unable to determine whether the ALJ . . . gave the treating [source's] evidence substantial or considerable weight or found no good cause to do so."  *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982). But because we can discern that the ALJ gave Dr. Sultana's opinion little weight, no remand is required.

medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In assessing the claimant's credibility about her symptoms and their effects, the ALJ will consider in addition to the objective medical evidence: the individual's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 404.1529(c)(3).

We have recognized that unique issues arise when a claimant suffers from fibromyalgia. Fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms." *Moore*, 405 F.3d at 1211. Because the "hallmark" of fibromyalgia is a "lack of objective evidence," a claimant's subjective complaints may be the only means of determining the severity of the claimant's condition and the functional limitations she experiences. *Id.* This Court will reverse an ALJ's determination that a

17

fibromyalgia claimant's testimony was incredible where the lack of objective findings provided the basis for the adverse credibility determination. *Id.*

Here, the ALJ found that because Horowitz's subjective complaints were inconsistent with the medical evidence in this case, her testimony was not credible. The ALJ pointed out that Horowitz's physical examinations showed no ineffective ambulation, abnormal gait, significant decrease in range of motion, sensory changes, reflex abnormalities, or deficiencies in positive straight leg raises. Horowitz argues that because her conditions were caused by fibromyalgia, the ALJ could not rely on the lack of objective evidence to make an adverse credibility determination. The flaw in Horowitz's argument is that she testified that at least some of her physical impairments, such as the injuries to her right leg that required her to walk with a cane, were the result of injuries she suffered when she was the victim of a violent crime. As such, it was appropriate for the ALJ to consider whether there was objective evidence corroborating this injury. And because there are no objective findings—such as evidence that she had ineffective ambulation or abnormal gait—to corroborate her account about the symptoms and pain in her right leg, substantial evidence supported the ALJ's credibility determination.

The ALJ's credibility determination is supported by substantial evidence for a second reason as well: Horowitz received conservative treatment for her impairments. ALJs are permitted to consider the type of a treatment a claimant

18

received in assessing the credibility of her subjective complaints.  20 C.F.R. § 405.1529(c)(3)(iv), (v); *see Wolfe*, 86 F.3d at 1078.  As we explained above, for Horowitz's mental impairments, her treatment plan was conservative in nature and essentially limited to short medication management appointments.  Similarly, for her physical impairments, Dr. Busch provided conservative treatment for Horowitz's pain and never indicated that she should have been receiving more or different treatments.  In light of this evidence, we conclude that the ALJ's adverse credibility determination was appropriate.

## C.    The Appeals Council Did Not Err in Refusing to Consider Horowitz's Additional Evidence.

Horowitz argues that the Appeals Council erred in refusing to consider the additional evidence that she submitted from Dr. Busch.  "[T]he Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits. *Washington*, 806 F.3d at 1320 (internal quotation marks omitted).  We have explained that evidence is chronologically relevant when it relates to the period or on before the date of the ALJ's decision. *Id.* at 1322.  An examination conducted after the ALJ's decision may still be chronologically relevant if it relates back to the period before the ALJ's decision. *Id.*

Here, the Appeals Council appropriately determined that Dr. Busch's opinions were not chronologically relevant.  Dr. Busch issued his opinions after the ALJ rendered her decision.  Nonetheless, Horowitz argues that Dr. Busch's

19

opinions are chronologically relevant because they were based on care that Dr. Busch provided before the ALJ rendered her decision.  The problem for Horowitz is that there is nothing in Dr. Busch's opinions showing that he based them on treatment provided to Horowitz before the ALJ's decision.

Horowitz asserts that our opinion in *Washington* shows that Dr. Busch's opinions are chronologically relevant.  But in *Washington*, we held that the opinion of a psychologist who examined the claimant after the ALJ's decision was chronologically relevant when the psychologist stated in his opinion that his conclusions were based on, among other things, his review of the medical records from the period before the ALJ's decision.  *See* 806 F.3d at 1322.  Dr. Busch's opinions fail to show directly or indirectly that he based his opinion on medical records from the time period before the ALJ's decision, making *Washington* inapplicable here.  Dr. Busch's opinions were not chronologically relevant; we thus hold that the Appeals Council properly refused to consider them.

## IV.   CONCLUSION

For the reasons set forth above, we affirm the Commissioner's decision to deny Horowitz benefits.

**AFFIRMED.**

20